B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Stephen Darr, as he is the Trustee of the Chapter 11 Estates of Each of the Debtors | DEFENDANTS<br>Carlos Wanzeler, et al. |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Andrew G. Lizotte, Murphy & King, P.C., One Beacon Street, Boston, MA  02108 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☑ Trustee | PARTY (Check One Box Only)<br>☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

To recover fraudulent and preferential transfer, breach of fiduciary duty and other relief.

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☑ 12-Recovery of money/property - §547 preference
☑ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Telexfree, LLC, Telexfree, Inc., and Telexfree Financial, Inc. | BANKRUPTCY CASE NO.<br>14-40987-MSH | |
| DISTRICT IN WHICH CASE IS PENDING<br>Massachusetts | DIVISION OFFICE<br>Western | NAME OF JUDGE<br>Hoffman |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>April 1, 2016 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Andrew G. Lizotte |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>　　　　　Debtors. | Chapter 11 Cases<br><br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN DARR, AS HE IS THE TRUSTEE<br>OF THE CHAPTER 11 ESTATES OF EACH<br>OF THE DEBTORS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CARLOS WANZELER, JAMES MERRILL,<br>CARLOS COSTA, PRISCILA FREITAS<br>COSTA, FABIO WANZELER, LYVIA MARA<br>CAMPISTA WANZELER, MARIA<br>EDUARDA WANZELER DE ALMEIDA E<br>SOUZA, DRUCILA WANZELER, MARISA<br>MACHADO WANZELER SALGADO,<br>RENATO ALVES, ANA COSTA, NATHANA<br>SANTOS REIS, FABIO FARIA, LELIO<br>CELSO RAMIRES FARIAS, SANDERLY<br>RODRIGUES, VAGNER ROZA, ROBERT<br>BOURGUIGNON, REGINA CELIA<br>MANHAES DA ROZA REGINA CELIA,<br>MICHAEL CALAZANS, FABIO DE ARRAZ<br>CRISPIM, SHEFFA MONTOYA, LUIS<br>FERREIRA, SANDRES LEVIS, FEBE<br>WANZELER DE ALMEIDA E SOUZA,<br>BRUNO RANGEL CARDOZO,<br>　　　　　Defendants. | Adversary Proceeding<br>No. 16- |

## **COMPLAINT**

### **Introduction**

Stephen Darr is the duly appointed and acting trustee (the "Trustee") of the Chapter 11

bankruptcy estates ("Estates") of TelexFree, Inc. ("Inc."), TelexFree, LLC ("LLC") and

TelexFree Financial, Inc. ("Financial" and, collectively, the "Debtors" or "TelexFree").  As

Trustee, Mr. Darr brings this adversary proceeding requesting the following relief:

(i)       to recover monies from James Merrill ("Merrill"), Carlos Wanzeler

("Wanzeler"), and Carlos Costa ("Costa" and collectively, the "Principals") for receipt of

fraudulent and preferential transfers, breach of their duties to the Debtors, looting, and civil

conspiracy;

(ii)       to recover monies from certain net winners in the Debtors' Ponzi scheme who

were related to or affiliated with the Principals for their receipt of fraudulent transfers and

preferential transfers, for participation in the civil conspiracy, and for aiding and abetting the

Principals' commission of tortious conduct;

(iii)       to recover monies from certain recipients of so-called "manual credits" for

participation in the civil conspiracy, and for aiding and abetting the Principals' commission of

their tortious conduct.

## Preliminary Statement

These cases involve the implementation of a massive Ponzi and pyramid scheme by the

Principals through the vehicle of TelexFree.  TelexFree was established to operate as a multi-

level marketing company engaged in the sale of voice over internet protocol ("VoIP") services.

In actuality, the Principals Wanzeler, Merrill and Costa were perpetrating a Ponzi scheme

involving as many as a million or more participants in multiple countries (hereinafter, parties

who became members of the Debtors' Ponzi scheme shall be referred to as "Participants").

The VoIP revenues generated by TelexFree were wholly inadequate to satisfy ongoing

Participant claims created by the Principals' misconduct.  As a result, in classic fashion,

TelexFree paid its earlier Participants not with revenues from selling the VoIP service, but with

money received from later Participants.  As further described herein, the Principals devised the

Ponzi scheme to create a market for credits issued by the Debtors which enabled the Principals to convert worthless credits into cash by among other things having innocent Participants purchase the credits. One method of monetizing credits was to engage in so-called "triangular transactions" whereby a recruiting Participant brought a new Participant into the TelexFree scheme, the new Participant paid their membership fee directly to the recruiting Participant, and the recruiting Participant used their accumulated credits to satisfy the membership invoice of the new Participant.

TelexFree was a money-making machine for its Principals and the Defendants. In December 2013, the Principals collectively withdrew $10,000,000 from TelexFree. The Principals additionally bilked money out of TelexFree in at least two other ways – by having related parties acquire membership plans and become Net Winners who recovered more from the scheme than they invested, and by having TelexFree issue so-called "manual credits" to relatives and associates of the Principals that could be sold for cash to other Participants.

The Principals orchestrated a similar scheme based in Brazil. Ympactus Comercial Ltda. ("Ympactus") was a Brazilian affiliate of TelexFree operating a substantially similar scheme and using the TelexFree name. In June 2013, the Brazilian authorities shut down Ympactus, and on or about October 23, 2015, the Brazilian court entered a decision finding Ympactus to have engaged in a pyramid scheme. TelexFree was designed by the Participants to continue the scheme begun through Ympactus, with a base in the United States.

In March 2014, the Principals, under mounting pressure from regulatory agencies, made a failed attempt to revise the TelexFree compensation scheme. These changes led to Participant dissatisfaction and accelerated withdrawal requests. The Debtors were then unable to sustain the scheme, leading to its collapse and the filing of the Chapter 11 petitions. As a result of the

Principals' misconduct, federal and state governmental authorities commenced enforcement actions against TelexFree and raided TelexFree's offices. The federal authorities also indicted Wanzeler and Merrill.

Through the activities alleged in this Complaint, the Principals orchestrated an illegal Ponzi and pyramid scheme to defraud hundreds of thousands of Participants of hundreds of millions of dollars. The Principals and their associates reaped great rewards from involvement in the scheme, to the detriment of the vast majority of Participants who were net losers and TelexFree which incurred liability to Participants of upwards of $1,000,000,000. By this action, the Trustee seeks to recover payments made to or for the benefit of the Principals as fraudulent or preferential transfers. The Trustee also seeks damages against the Principals for their breach of duties to TelexFree in the implementation of the Ponzi scheme and for looting and the commission of a civil conspiracy.

The Principals enlisted relatives and other associates in their implementation of the massive TelexFree fraud. Certain Participants who were relatives or surrogates of the Principals (the "Related Net Winners") received net winnings from their involvement in the scheme and used these net winnings to benefit themselves and the Principals. The Principals also caused TelexFree to issue large amounts of "manual credits" - that is, credits unrelated to those credits generated from advertising and recruiting activity - to certain other individuals who were relatives or surrogates of the Principals (the "Manual Credit Recipients"). These manual credits were then sold to other Participants for the benefit of the Principals and the Manual Credit Recipients.

Each of the foregoing activities enabled the Principals and their select associates to
maximize their ill-gotten gains from the TelexFree fraud, while leaving TelexFree with a large
liability to net losers and no ability to satisfy the indebtedness.

### Parties

1.     The Trustee, who is the duly appointed Chapter 11 trustee of the Debtors, has a
principal place of business in Boston, Massachusetts.

2.     The Defendant, Carlos Wanzeler, is an individual who resides, upon information
and belief, at Rua Professor Belmiro Siqueira, 85, Edificio Vitoria Bay, Torre 1, Apartamento
2504, Vitoria, estado do Espirito Santo, Brazil.

3.     The Defendant, James Merrill, is an individual who resides at One Coburn Drive,
Ashland, Massachusetts 01721.

4.     The Defendant, Carlos Costa, is an individual who resides, upon information and
belief, at Avenida Antonio Gil Veloso, 2500, Edificio Marlim, Apartamento 801, Itapua, Vila
Velha, estado do Espirito Santo, Brazil.

5.     The Defendant Priscila Freitas Costa is, upon information and belief, the daughter
of Carlos Costa and resides at 73 Harvard Street, Chelsea, MA 02150.

6.     The Defendant Fabio Wanzeler is, upon information and belief, the brother of
Wanzeler and resides at 5045 Wiles Road, Apt. 308, Coconut Creek, FL  33073.

7.     Lyvia Mara Campista Wanzeler is, upon information and belief, Wanzeler's
daughter and resides at 41A Mount Avenue, Worcester, MA  01606.

8.     Maria Eduarda Wanzeler de Almeida e Souza is, upon information and belief,
related to Wanzeler and resides at calle publica 14 nume 385, Industrial DA 888888 Uruguay.

9.     Drucila Wanzeler is, upon information and belief, related to Wanzeler and resides
at calle publica 14 nume 385, Industrial DA 888888 Uruguay.

10.     Marisa Machado Wanzeler Salgado is, upon information and belief, related to Wanzeler and resides at Rua Josa Luiz Gabeira, 171 Vitoria ES 29057-570 Spain.

11.     Renato Alves is an individual who resides at Avenida cassiano recardo, Sao jose dos Campos, 12246-870 Brazil.

12.     Ana Costa is an individual who resides at rua: tobias barreto b. santa, belo horizonte 19 31520-380 Brazil.

13.     Nathana Santos Reis is an individual who resides at Rua Vinicius Torres, vila velha, Es 29101-105 Brazil.

14.     Fabio Faria is an individual who resides at 6965 Piazza Grand Avenue, Apt 202, Orlando FL 32835.

15.     Lelio Celso Ramires Farias is an individual who resides at 7906 Canyon Drive Circle, Orlando, FL 32835.

16.     Sanderly Rodrigues is an individual who resides at 189 Squire Road, #40, Revere, MA 02151.

17.     Vagner Roza is an individual who resides at Rua Ateneu, Vila Velha, 29102-853 Brazil.

18.     Robert Bourguignon is an individual who resides at 3611 NW 19th St., Coconut Creek, FL 33066.

19.     Regina Celia Manhaes da Roza Regina Celia is an individual who resides at Rua Ateneu – 10, Vila Celha, 29102-853, Brazil.

20.     Michael Calazans is an individual who resides at 3611 NW 19th Street, Coconut Creek, FL 33066.

21.     Fabio de Arraz Crispim is an individual who resides at Rua Castelo Branco, Vila Velha, MO 29123-290 Brazil.

22.     Sheffa Montoya is an individual who resides at R Machado de Assis, Porto Alegre 17, 91220-390 Brazil.

23.     Luis Ferreira is an individual who resides at Santa Edwirgens, Sao Carlos, CT, 12576 Brazil.

24.     Sandres Levis is an individual who resides at Rua Eugenio Euclides, Sao Paulo SP 02179060.

25.     Febe Wanzeler de Almeida e Souza is an individual who resides at 21 Strouch Avenue, Wilmington, MA 01887.

26.     Bruno Rangel Cardozo is an individual who resides at Rua Diamane, Cariacica ES, 29146-674 Brazil.

### Jurisdiction and Venue

27.     This adversary proceeding is brought pursuant to §§ 547, 548, 550 and 551 of Title 11 of the United States Code for the avoidance and recovery of fraudulent conveyances and preferential transfers and under applicable nonbankruptcy law.

28.     This Court has jurisdiction over the adversary proceeding pursuant to 28 U.S.C. § 1334.

29.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)(F)(H) and (O).

30.     Venue in this district is proper under 28 U.S.C. § 1409.

### Prior Proceedings

31.     On April 13, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 petitions with the United States Bankruptcy Court for the District of Nevada.

7

32.     On April 14, 2014, the Massachusetts Securities Division filed an enforcement action against Inc. and LLC.

33.     On April 15, 2014, federal agents executed search warrants at the TelexFree office in Marlborough, Massachusetts and seized documents (including $38,000,000 in cashiers' checks) and the computer servers.  Also on April 15, 2014, the Securities and Exchange Commission filed a complaint.

34.     On or about April 16, 2014, the United States District Court entered an ex parte temporary restraining order freezing assets and granting other related relief.

35.     On May 9, 2014, a federal criminal complaint was filed against Merrill and Wanzeler, charging them with conspiracy to commit wire fraud.  Wanzeler fled the country. Merrill is under house arrest.

36.     By order dated May 6, 2014, the Nevada Bankruptcy Court approved a motion to change venue filed by the Securities and Exchange Commission.  The cases were transferred to this Court on May 9, 2014.

37.     On May 30, 2014, this Court approved the motion of the Office of the United States Trustee to appoint a Chapter 11 trustee, and the Trustee was appointed on June 6, 2014.

## Statement of Facts

38.     Inc. is a Massachusetts corporation that, prior to February 2012, was known as Common Cents Communications, Inc. ("Common Cents").  Common Cents was incorporated in 2002 by Wanzeler, Merrill, and Steven Labriola.  Upon information and belief, the current shareholders of Inc. are Wanzeler and Merrill.

39.     LLC is a Nevada corporation that was incorporated by Wanzeler, Merrill, and Costa in July 2012 and registered to do business in Massachusetts in April 2013.  Upon

8

information and belief, the current members of LLC are Wanzeler and Merrill, Costa's interest

having been transferred to Merrill in late 2013.

    40.    Financial is a Florida corporation formed in 2013. Upon information and belief,

Financial is wholly owned by LLC.

    41.    At all relevant times, Merrill was the president and a director of Inc. and a

manager of LLC.

    42.    At all relevant times, Wanzeler was the treasurer and a director of Inc. and a

manager of LLC. In addition, he was sometimes held out as TelexFree's vice president of

technology.

    43.    Costa was previously a principal and director in LLC. Costa was also a principal

in Ympactus.

    44.    In the late 1990s, Wanzeler and Merrill became sales agents for WorldxChange, a

multi-level marketing company that sold inexpensive long-distance telephone service using sales

agents to recruit other sales agents as well as customers. Wanzeler and Merrill recruited Labriola

as one of their sales agents. In 2002, Wanzeler, Merrill, and Labriola incorporated Common

Cents as a vehicle for their sales efforts on behalf of WorldxChange. Wanzeler did most of the

company's recruiting through his contacts in Brazil and the Brazilian community in

Massachusetts. In 2003, the three individuals ceased working with WorldxChange after it was

acquired by another company and discontinued the multi-level marketing program.

    45.    In 2005, Wanzeler began selling analog telephone adapters – devices that link a

traditional telephone line with a digital network or VoIP services. Most of his customers were in

Brazil, and Wanzeler used the names "Brazilian Help" in the United States and "Disk A Vontade

Telefonia" in Brazil. His promotional efforts consisted primarily of television and radio ads in

Brazil because an attempt to employ a multi-level marketing model was not successful, and the

adapters were mainly sold in neighborhood stores.   In 2007, Wanzeler incorporated Brazilian

Help in Massachusetts.

46.     In early 2012, Costa, who had been Wanzeler's top sales agent in Brazil,

suggested that they recruit customers through ads on the internet.  Wanzeler and Costa created

Ympactus, a Brazilian company that used the name "TelexFree" and marketed a VoIP service

called "99TelexFree" for $49.90 per month.

47.     At the same time, Merrill and Wanzeler began taking steps to bring "TelexFree"

to the United States.  In February 2012, Wanzeler, Merrill, and Costa changed the name of

Common Cents to TelexFree, Inc.  In July 2012, Wanzeler, Merrill, and Costa formed TelexFree,

LLC, purportedly to handle TelexFree transactions outside Massachusetts.  Wanzeler, Costa, and

associates in Brazil created a website called "telexfree.com" that was translated from Portuguese

into English.  In April 2012 TelexFree began raising money from Participants.

**A.  The TelexFree Program - Reliance on Promotional Activities by Participants**

48.     TelexFree purported to be in the business of providing a VoIP service that cost

$49.90 per month.  Customers registered their phone numbers with TelexFree and received

software that enabled their computers to place phone calls through the company's computer

servers in Marlborough.

49.     The Principals used TelexFree, however, to orchestrate the Ponzi scheme, with a

focus on recruiting new Participants and paying them to promote the company by placing

internet ads and recruiting other Participants. The Principals also structured the scheme so that,

in many instances, new recruits would pay membership fees directly to the Principals and higher

level Participants, through so-called "Triangular Transactions", rather than paying the money

directly to TelexFree.

50.     To reach prospective Participants, the Principals used the TelexFree website,

videos posted on the internet (primarily on the "YouTube" website), and large gatherings at

hotels and resorts.

### B.    Membership Options

51.     TelexFree charged $50 for a Participant to become a "member" or "partner."

Until it changed its compensation plan on March 9, 2014, TelexFree had two membership

options:

      a.    "AdCentral": $339 for a one-year contract ($50 membership fee plus $289 contract fee). Participants received ten one-month packages of the VoIP service at the outset and were required to place one internet ad per day. For each week they placed all the ads, Participants were entitled to one additional VoIP package, which could be sold or exchanged for $20 in credits with the Debtors. Thus, Participants who posted the required ads were eligible to receive $20 per week for 52 weeks, for a total return of $1,040 (a return of 207% on the investment of $339).

      b.    "AdCentral Family": $1,425 for a one-year contract ($50 membership fee plus $1,375 contract fee). Participants received fifty one-month packages of VoIP service at the outset and were required to place five internet ads per day. For each week they placed all the ads, Participants were entitled to five additional VoIP packages, which could be sold or exchanged for $20 in credits with the Debtors. Thus, the Participants who posted the required ads were eligible to receive $100 per week for 52 weeks, for a total return of $5,200 (a return of 265% on the investment of $1,425).

### C.    Incentives for Participants

52.     Each time that a Participant purchased a membership plan or a VoIP package, the

Participated established an account ("User Account") with the Debtors that was used to track the

Participant's activity in the scheme. In addition to credits for posting advertisements, the

11

Debtors issued credits to Participants' User Accounts for the sale of membership plans and the establishment of new User Accounts.

53.     TelexFree also issued credits to Participants for the sale of VoIP packages, although the VoIP packages were rarely sold or used.

54.     The credits issued to Participants for placing advertisements and selling membership plans and VoIP packages could be redeemed for cash, transferred to another User Account, or applied in satisfaction of an invoice for another User Account.

55.     Invoices for the purchase of a membership plan could be satisfied in one of two ways. Participants could pay the invoice in cash directly to the Debtors.   Alternatively, a Participant could monetize accumulated credits by recruiting a Participant to join the Debtors' scheme and using his/her accumulated credits to satisfy the invoice for the later Participant's membership plan in exchange for payment of the membership fee from the new Participant (a "Triangular Transaction"). In a Triangular Transaction, the Debtors issued the membership invoice to the recruited Participant, the recruited Participant paid the membership invoice that was due to the Debtors to the recruiting Participant, and the Debtors redeemed the credits of the recruiting Participant in satisfaction of the invoice.

56.     In fact, it was a regular practice of the Debtors' scheme that membership fees were paid by the use of accumulated credits rather than by cash. In the majority of instances, membership fees were therefore paid from one Participant to another, rather than being paid to TelexFree. The Principals and high level Participants reaped the benefit of these cash payments, while TelexFree was burdened with increasing Participant liabilities that they could not satisfy.

12

57.    The Principals devised the scheme in such a manner so as to create a market for trading in credits, since credits were needed to implement Triangular Transactions and credits could be converted into cash on demand.

58.    As a further method of extracting cash from the scheme, the Principals orchestrated the issuance of manual credits by TelexFree to select relatives and surrogates to cash in on the demand for credits.  Manual credits were credits issued to Participants' User Accounts unrelated to the purchase of a membership plan and not resulting from the placement of advertisements or other components of the compensation scheme.  The Manual Credits were issued to the Manual Credit Recipients for no consideration, and many of these manual credits were sold to other Participants, generating additional money for the Principals and the Manual Credit Recipients while expanding the liability of TelexFree when the newly created credits would eventually be redeemed.

**D.    The TelexFree Investment Program Was a Ponzi and Pyramid Scheme**

59.    In June 2013, a Brazilian state court suspended the operations of Ympactus, TelexFree's affiliate in Brazil, and froze its assets, based on suspicions that it was operating a pyramid scheme.

60.    After the enforcement action in Brazil, the Principals publicly claimed that TelexFree was different from illegal multi-level marketing programs, because it had an actual product to sell – the VoIP service.

     a.    Merrill and Wanzeler can be heard on a slide presentation that was posted on YouTube on June 20, 2013 with the title "TelexFREE Investigation with President James Merrill, Vice President Carlos Wanzeler + Steve Labriola."  All three tried to downplay the significance of the enforcement action in Brazil.  Merrill stated, "Inquires like this are very common in network marketing."  Wanzeler stated, "Our company is different from any other network marketing."

13

b.  Carlos Costa appeared in a video that was posted on YouTube on August 15, 2013 with the title "TelexFREE: Carlos Costa Proves TelexFREE is Not an Illegal Pyramid." Costa stated that TelexFREE "never was, never will be" an illegal pyramid because it sells the VoIP service. He added:

> People will pay the monthly fee [for the VoIP service]. That sustains our business.
> We do not depend on everyone coming in in order to pay the people who are already in.

61.  The Principals were actively misleading Participants, with the result that additional Participants continued to join the scheme and the Debtors' liability to Participants increased exponentially.

62.  In short, the Principals, in concert with the other Defendants, were running a huge Ponzi scheme. By order dated November 25, 2015, as amended on December 21, 2015, the Court entered an order finding that the Debtors operated a Ponzi scheme and that this finding was the law of the case.

**E.    The Principals orchestrated the Ponzi scheme.**

63.  The Principals were the leaders of TelexFree and actively promoted the fraud.

*i.    Wanzeler*

64.  Wanzeler was the treasurer and a director of TelexFree Inc., a co-manager of TelexFree LLC and an officer and director of TelexFree Financial.

65.  Wanzeler was one of the main public faces of TelexFree and attended many promotional events so as to continue to reap the benefits of the scheme. For example:

(i)    After the enforcement action in Brazil, Wanzeler can be heard on a You Tube video posted shortly thereafter making reassuring statements about TelexFree and downplaying the significance of the shutdown of Ympactus;

(ii)   Wanzeler can be seen on a video of an event in California in July 2013 defending the legitimacy of TelexFree;

14

(iii)   On March 9, 2014, Wanzeler appeared onstage at the event in Boston where TelexFree announced the new compensation plan that required each Participant to have five VoIP customers. Wanzeler can be seen in a video that was posted on YouTube on March 12, 2014 making reassuring statements about the TelexFree scheme and Participants' ability to earn compensation.

66.   At all relevant times, Wanzeler was a principal, senior officer, and substantial owner of the Debtors and was a person in control of the Debtors.

67.   At all relevant times, Wanzeler was an insider of the Debtors.

68.   Wanzeler had extensive knowledge of, and was intimately involved in, the Ponzi scheme and the perpetration of that scheme for his benefit.

### *ii.*   *Merrill*

69.   Merrill was one of the main public faces of TelexFree and regularly made public statements to advance the scheme and to reap the benefits of the scheme.  For example:

(i)   The "Founder" section of the TelexFree website included a photo of Merrill standing in front of a large three-story building, with the caption "Mr. Merrill in front of the headquarters of Telexfree in the USA."  Similarly, marketing presentations on the company website contained a slide with a photo of Merrill and a photo of the same building with the caption "The Company HQ:  United States."  Merrill knew that the photo captions were materially false and misleading, because: (a) TelexFree, Inc. did not own or occupy the entire building; (b) TelexFree, Inc. originally shared a single suite with many other companies; (c) only in December 2013 did TelexFree, Inc. move into its own suite in a portion of the first floor; and (d) TelexFree, LLC had no physical office at all, just a mailing address in Nevada.  Despite being the company's president, Merrill failed to take effective action to prevent or correct the misstatements;

(ii)   On March 1, 2013, TelexFree issued a press release that included a quote from Merrill: "In addition to providing an excellent service at a very reasonable price, the real "secret sauce" of our success is our compensation plan.  We have developed a unique system which allows every one of our independent representative [sic] the ability to make money every week.  We actually pay our representatives weekly if they follow our system and advertise our service on the Internet";

(iii)   Merrill can be head on the YouTube video that was posted on June 20, 2013, making reassuring statements about TelexFree in light of the shutdown of Ympactus;

15

(iv) Merrill attended a large gathering of Participants in California on July 27, 2013. Portions of the event were videotaped. Merrill can be seen in the video making reassuring statements about TelexFree and the Principals;

(v) On March 9, 2014, Merrill appeared onstage at the event in Boston where TelexFree announced the new compensation plan that required each Participant to have five VoIP customers. Merrill reassured Participants of their ability to continue to earn money from the scheme.

70. At all relevant times, Merrill was a principal, senior officer, and substantial owner of the Debtors and was a person in control of the Debtors.

71. At all relevant times, Merrill was an insider of the Debtors.

72. Merrill had extensive knowledge of, and was intimately involved in, the Ponzi scheme and the perpetration of that scheme for his benefit.

*iii.* *Costa*

73. Costa was actively involved in promoting the scheme, both as to TelexFree and Ympactus. For example:

(i) Costa regularly produced and appeared in internet videos extolling the virtues of TelexFree;

(ii) After the enforcement action in Brazil, Costa continued to deny that TelexFree and Ympactus were engaged in an illegal pyramid scheme, even after Brazilian authorities had found as much.

74. At all relevant times, Costa was a principal, senior officer, and substantial owner of the Debtors and was a person in control of the Debtors.

75. At all relevant times, Costa was an insider of the Debtors.

76. Costa had extensive knowledge of, and was intimately involved in, the Ponzi scheme and the perpetration of that scheme for his benefit.

**F.    Related Net Winners and Manual Credit Recipients**

16

77.    The Principals used relatives and surrogates to enhance their profits from the Debtors' scheme.

78.    In many instances, the Principals facilitated the opening of new User Accounts for friends and relatives who recovered more from the scheme than they invested. These net winnings inured to the benefit of the Principals and the Related Net Winners.

79.    For the purposes herein, a "Net Winner" is a person who received more money from the Debtors (as "profit payments," "commissions," "bonuses" or any other payments) and from other persons in connection with the purchase of membership plans or VoIP Packages, than that person paid to the Debtors or to other persons in connection with the purchase of membership plans or VoIP Package ("Net Winner Payment") as determined based upon an aggregation of a Participant's User Accounts. Determination of the Net Winner Payment does not include unredeemed credits, as described below.

80.    Wanzeler and his Related Net Winners received $654,066 from such Related Net Winners' participation in the scheme, as further set forth below:

(i)    Fabio Wanzeler is, upon information and belief, the brother of Wanzeler. In the two years preceding the Petition Date, Fabio Wanzeler had Net Winner Payments from participation in the TelexFree scheme totaling $511,828. In the ninety days preceding the Petition Date, Fabio Wanzeler had Net Winner Payments totaling $300,005;

(ii)   Lyvia Mara Campista Wanzeler is, upon information and belief, the daughter of Wanzeler. Lyvia Mara Campista Wanzeler had Net Winner Payments from participation in the TelexFree scheme totaling $97,515. In the ninety days

preceding the Petition Date, Lyvia Mara Campista Wanzeler had Net Winner

Payments totaling $4,346;

(iii)    Maria Eduarda Wanzeler de Almeida e Souza is, upon information and belief,

related to Wanzeler.  Maria Eduarda Wanzeler de Almeida e Souza had Net

Winner Payments from participation in the TelexFree scheme totaling $18,884;

(iv)    Drucila Wanzeler is, upon information and belief, related to Wanzeler.  Drucila

Wanzeler had Net Winner Payments from participation in the TelexFree scheme

totaling $15,678.  In the ninety days preceding the Petition Date, Drucila

Wanzeler had Net Winner Payments totaling $9,171;

(v)    Marisa Machado Wanzeler Salgado is, upon information and belief, related to

Wanzeler.  Marisa Machado Wanzeler Salgado had Net Winner Payments from

participation in the TelexFree scheme totaling $10,161.

81.    Costa and his Related Net Winners received $2,041,648 from such Related Net

Winners' participation in the scheme, as further set forth below:

(i)    Priscila Freitas Costa is, upon information and belief, the daughter of Costa.

Priscila Freitas Costa had Net Winner Payments from participation in the

TelexFree scheme totaling $542,298.  In the ninety days preceding the Petition

Date, Priscila Freitas Costa had Net Winner Payments totaling $2,423;

(ii)    Ana Costa is, upon information and belief, related to Costa.  Ana Costa had Net

Winner Payments from participation in the TelexFree scheme totaling $1,499,350.

In the ninety days preceding the Petition Date, Ana Costa had Net Winner

Payments totaling $1,050,123.

18

82.    In addition to receiving compensation from the Net Winner Payments paid or payable to the Related Net Winners, the Principals utilized the manual credit system to derive additional compensation from the TelexFree scheme. The Principals and/or the Manual Credit Recipients recovered up to $98,611,860 from the sale of manual credits, as further set forth below:

(i)     Renato Alves received manual credits totaling $16,074,651. Alves monetized up to $15,238,326 of these manual credits for the benefit of himself and the Principals;

(ii)    Ana Costa received manual credits totaling $1,184,892. Costa monetized up to $62,878 of these manual credits for the benefit of herself and the Principals;

(iii)   Nathana Santos Reis received manual credits totaling $25,249,566. Reis monetized up to $25,249,566 of these manual credits for the benefit of himself and the Principals;

(iv)   Fabio Faria received manual credits totaling $990,702. Faria monetized up to $990,702 of these manual credits for the benefit of himself and the Principals;

(v)    Lelio Celso Ramires Farias received manual credits totaling $726,425. Farias monetized up to $726,425 of these manual credits for the benefit of himself and the Principals;

(vi)   Sanderly Rodrigues received manual credits totaling $1,757,797. Rodrigues monetized up to $1,757,797 of these manual credits for the benefit of himself and the Principals;

(vii)  Vagner Roza received manual credits totaling $1,337,465. Roza monetized up to $1,337,465 of these manual credits for the benefit of himself and the Principals;

19

(viii)   Robert Bourguignon received manual credits totaling $2,913,701.  Bourguignon monetized up to $2,913,701 of these manual credits for the benefit of himself and the Principals;

(ix)   Regina Celia Manhaes da Roza Regina Celia received manual credits totaling $2,341,414.  De Roza monetized up to $2,341,414 of these manual credits for the benefit of herself and the Principals;

(x)   Michael Calazans received manual credits totaling $8,146,755.  Calazans monetized up to $8,146,755 of these manual credits for the benefit of himself and the Principalsl;

(xi)   Fabio de Arraz Crispim received manual credits totaling $2,361,216.  Crispim monetized up to $2,361,216 of these manual credits for the benefit of himself and the Principals;

(xii)   Sheffa Montoya received manual credits totaling $1,508,234.  Montaya monetized up to $1,508,234 of these manual credits for the benefit of herself and the Principals;

(xiii)   Luis Ferreira received manual credits totaling $1,709,679.  Ferreira monetized up to $1,110,000 of these manual credits for the benefit of himself and the Principals;

(xiv)   Sandres Levis received manual credits totaling $29,526,000.   Leivs monetized up to $29,489,858 of these manual credits for the benefit of himself and the Principals;

(xv)   Febe Wanzeler de Almedia e Souza received manual credits totaling $900,000.  Souza monetized up to $900,000 of these manual credits for the benefit of himself and the Principals;

20

(xvi)   Bruno Rangel Cardozo received manual credits totaling $4,477,523.  Cardozo

monetized up to $4,477,523 of these manual credits for the benefit of himself and

the Principals.

### G.    Payments made to or for the benefit of the Principals

83.    In addition to compensation derived from collusion with the Related Net Winners

and the Manual Credit Recipients, the Principals received numerous direct payments from

TelexFree, either as distributions on account of their ownership interest, salaries, or otherwise.

84.    In the two year period prior to the Petition Date, the Debtors paid the sum of

$3,260,934.07 directly to Merrill, as set forth on Exhibit "A" hereto.  Merrill received additional

sums within two years of the Petition Date on account of monies paid or payable to the Related

Net Winners and the Manual Credit Recipients.

85.    In the one year period prior to the Petition Date, the Debtors paid the sum of

$3,252,187.49 to Merrill, as set forth on Exhibit "B" hereto.

86.    In the two year period prior to the Petition Date, the Debtors paid the sum of

$3,785,192.79 to Wanzeler, as set forth on Exhibit "C" hereto.  Wanzeler received additional

sums within two years of the Petition Date on account of monies paid or payable to the Related

Net Winners and the Manual Credit Recipients.

87.    In the one year period prior to the Petition Date, the Debtors paid the sum of

$3,785,092.99 to Wanzeler, as set forth on Exhibit "D" hereto.

88.    During the two year period and the one year period prior to the Petition Date, the

Debtors paid the sum of $3,658,900 to Costa, as set forth on Exhibit "E" hereto.  Costa received

additional sums within two years of the Petition Date on account of monies paid or payable to

the Related Net Winners and the Manual Credit Recipients.

## COUNT ONE

**Fraudulent Transfer -- Constructive – 11 U.S.C. §§ 548, 550 and 551- Principals**

89.     The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

90.     Each of the transfers made directly or indirectly to the Principals within two years of the Petition Date, including payments received as a mediate transferee from the Related Net Winners and the Manual Credit Recipients (the "Two Year Transfers") constitutes a "transfer," as that term is defined in 11 U.S.C. § 548, of an asset or interest in an asset of the Debtors.

91.     The Two Year Transfers were made within two years of the Petition Date.

92.     Each of the Two Year Transfers was made while the Debtors were insolvent.

93.     Each of the Two Year Transfers was made for less than reasonably equivalent value.

94.     The Two Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Principals pursuant to §§ 550 and 551 of the Bankruptcy Code.

95.     As a result of the foregoing, the Trustee is entitled to a judgment against the Principals: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers from the Principals for the benefit of the Estates, in amounts to be determined by the Court.

## COUNT TWO

**Fraudulent Transfer – Actual Intent – 11 U.S.C. §§ 548, 550 and 551- Principals**

96.     The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

97.     Each of the Two Year Transfers was made within two years of the Petition Date.

98.     Each of the Two Year Transfers was made with the actual intent to hinder, delay or defraud some or all of the Debtors' then existing and/or future creditors.

99.     The Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(A) and recoverable from the Principals pursuant to §§550 and 551 of the Bankruptcy Code.

100.     As a result of the foregoing, the Trustee is entitled to a judgment against the Principals: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Transfers be set aside, and (c) recovering the Two Year Transfers from the Principals for the benefit of the Estates, in amounts to be determined by the Court.

## COUNT THREE

### Preferences – 11 U.S.C. §§ 547, 550 and 551- Principals

101.     The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

102.     Each of the payments made to the Principals within one year of the Petition Date (the "One Year Transfers") constitute transfers of property of the Estates.

103.     Each One Year Transfer was made:

(a)     to or for the benefit of the Principal, who claims to have been a creditor at the time of the One Year Transfers;

(b)     for or on account of an antecedent debt owed by the Debtors before such One Year Transfer was made;

(c)     to an insider of the Debtors;

(d)     while the Debtors were insolvent;

(e)     within one year of the Petition Date; and

23

(f)      enabling the Principals to receive more than the Principals would receive if the

cases were under Chapter 7, the One Year Transfer was not made, and the

Principal received payment of such debt to the extent provided by the provisions

of Title 11 of the United States Code.

104.    The foregoing One Year Transfers constitute preferential transfers avoidable by

the Trustee pursuant to 11 U.S.C. § 547 and recoverable from the Principals pursuant to §§550

and 551 of the Bankruptcy Code

105.    As a result of the foregoing, the Trustee is entitled to a judgment against the

Principals: (a) avoiding and preserving the preferential transfers, (b) directing that the

preferential transfers be set aside, and (c) recovering the One Year Transfers from the Principals,

as follows: $3,252,187.49 from Merrill; $3,785,092.99 from Wanzeler; and $3,658,900 from

Costa.

## COUNT FOUR

### Breach of Duty of Care- Principals

106.    The Trustee realleges and repeats the allegations contained in the foregoing

paragraphs and by reference incorporates them herein.

107.    The Principals, as directors of TelexFree, at all relevant times owed a fiduciary

duty of care to TelexFree.

108.    As such, the Principals had an obligation (i) to exercise due care and diligence in

the management and administration of TelexFree and in the use and preservation of TelexFree's

property, funds and assets; and (ii) to ensure that TelexFree did not engage in any unsound

management and investment practices.

109.    The Principals breached their fiduciary duty of care to TelexFree by:

24

(i)     causing TelexFree to engage in a large scale Ponzi scheme, where operations were funded not principally from the sale of a legitimate product or service but from the membership contributions of new Participants;

(ii)    enlisting the assistance of relatives and other surrogates to become Participants and to carry out the Ponzi scheme for the benefit of the Principals and the Related Net Winners;

(iii)   facilitating the issuance of manual credits to the Manual Credit Recipients, thereby expanding the scope of TelexFree's Ponzi scheme and enriching the Principals and the Manual Credit Recipients

(iv)   causing TelexFree to incur obligations to Participants who were net losers in the Ponzi scheme in amounts that TelexFree was wholly unable to pay.

## COUNT FIVE

### Breach of Duty of Good Faith- Principals

110.    The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

111.    The Principals, as directors, at all relevant times owed a fiduciary duty of good faith to TelexFree.

112.    As such, the Principals had an obligation (i) to deal fairly and honestly with TelexFree; (ii) to act in a responsible and lawful manner, with undivided loyalty; and (iii) to ensure that TelexFree did not engage in any unsound management and investment practices.

113.    The Principals breached their fiduciary duty of good faith to TelexFree by the following actions:

(i)     causing TelexFree to engage in a large scale Ponzi scheme, where operations were funded not principally from the sale of a legitimate product or service but from the membership contributions of new Participants;

(ii)    enlisting the assistance of relatives and other surrogates to become Participants and to carry out the Ponzi scheme for the benefit of the Principals and the Related Net Winners;

(iii)   facilitating the issuance of manual credits to the Manual Credit Recipients, thereby expanding the scope of TelexFree's Ponzi scheme and enriching the Principals and the Manual Credit Recipients;

(iv)   causing TelexFree to incur obligations to Participants who were net losers in the TelexFree Ponzi scheme in amounts that TelexFree was wholly unable to pay.

## COUNT SIX

### Looting- Principals

114.    The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

115.    The Principals were responsible for dealing properly with the funds and assets of TelexFree entrusted in their care.

116.    The Principals had exclusive power to control the disposition of TelexFree funds and other assets.

117.    The Principals looted TelexFree and committed corporate waste by drawing excessive distributions, by colluding with the Related Net Winners to extract additional fictitious profits from the TelexFree Ponzi scheme and sharing in any Net Winnings paid to such individuals, and by colluding with Manual Credit Recipient to have manual credits issued by

TelexFree that could then be monetized for the financial benefit of the Principals and the Manual

Credit Recipients.

118.    The actions taken by the Principals enriched the Principals and their agents and

caused TelexFree to incur obligations to Participants who lost money in the Ponzi scheme,

obligations which TelexFree was wholly unable to pay.

## COUNT SEVEN

### Civil Conspiracy- All Defendants

119.    The Trustee realleges and repeats the allegations contained in the foregoing

paragraphs and by reference incorporates them herein.

120.    The Defendants have combined by common design to enter into a civil

conspiracy.

121.    The Defendants agreed or commonly designed to engage in and implement

TelexFree's Ponzi scheme and further its activities.

122.    As detailed above, each of the Defendants engaged in a tortious act in furtherance

of the agreement or common design to engage in the unlawful Ponzi scheme.

123.    The Defendants, for an unlawful purpose and using unlawful means, with the

intent of so combining, conspired to implement the TelexFree Ponzi scheme and to profit from

the scheme, leaving TelexFree with liabilities to Participants for losses arising from involvement

in the scheme of upwards of $1,000,000,000 or more.

## COUNT EIGHT

### Fraudulent Transfers - Related Net Winners

124.    The Trustee realleges and repeats the allegations contained in the foregoing

paragraphs and by reference incorporates them herein.

125.    The Net Winner Payments were made within two years of the Petition Date.

27

126.   Each of the Net Winner Payments constitutes a "transfer," as that term is defined in 11 U.S.C. § 548, of an asset or interest in an asset of the Debtors.

127.   Each Net Winner Payment was made for less than fair consideration.

128.   Each Net Winner Payment was made while the Debtors were insolvent, undercapitalized, or unable to pay their debts as they became due.

129.   Each of the Net Winner Payments was made with actual intent to hinder, delay, or defraud creditors of TelexFree.

130.   Each of the Net Winner Payments constitutes a fraudulent transfer avoidable by the Trustee pursuant to § 548 of the Bankruptcy Code and recoverable from the Related Net Winners pursuant to § 550(a) of the Bankruptcy Code.

131.   As a result of the foregoing, pursuant to §§ 548, 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment against the Related Net Winners: (a) avoiding and preserving the Net Winner Payments, (b) directing that the Net Winner Payments be set aside, and (c) recovering the Net Winner Payments, or the value thereof, from the Related Net Winners for the benefit of the Estates.

## COUNT NINE

### Preferential Transfers - Related Net Winners

132.   The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

133.   Each of the payments made to the Related Net Winners within ninety days of the Petition Date constitute transfers of property of the Estates.

134.   Each 90 day transfer was made:

(a)   to or for the benefit of the Related Net Winner, who claims to have been a creditor at the time of the transfers;

28

(b)      for or on account of an antecedent debt owed by the Debtors before such transfer

was made;

(c)      while the Debtors were insolvent;

(d)      within ninety days of the Petition Date; and

(e)      enabling the Related Net Winners to receive more than the Related Net Winners

would receive if the cases were under Chapter 7, the transfer was not made, and

the Related Net Winner received payment of such debt to the extent provided by

the provisions of Title 11 of the United States Code.

135.    The foregoing transfers constitute preferential transfers avoidable by the Trustee

pursuant to 11 U.S.C. § 547 and recoverable from the Related Net Winners pursuant to §§550

and 551 of the Bankruptcy Code.

## COUNT TEN

### Aiding and Abetting Commission of Tortious Conduct - Related Net Winners

136.    The Trustee realleges and repeats the allegations contained in the foregoing

paragraphs and by reference incorporates them herein.

137.    Each Related Net Winner provided substantial assistance or encouragement to the

Principals in committing the primary causes of action alleged herein, and did so with unlawful

intent and knowledge that such parties were perpetrating an unlawful Ponzi scheme.

138.    The Related Net Winners rendered this substantial assistance despite their

knowledge that TelexFree's operations constituted an unlawful, unfair, deceptive, and

unsustainable Ponzi scheme and financial fraud.

139.    Such substantial assistance including the opening of User Accounts, actively

participating in the TelexFree Ponzi scheme, promoting the TelexFree scheme to other

Participants, and receiving Net Winner Payments for the benefit of the Principals and the Related Net Winners.

140.   As a direct result of the perpetration of the TelexFree Ponzi scheme, and the Related Net Winners' substantial assistance in connection therewith, TelexFree incurred liability to Participants for losses incurred in the Ponzi scheme of upwards of $1,000,000,000 or more.

## COUNT ELEVEN

### Aiding and Abetting Commission of Tortious Conduct-Manual Credit Recipients

141.   The Trustee realleges and repeats the allegations contained in the foregoing paragraphs and by reference incorporates them herein.

142.   Each Manual Credit Recipient provided substantial assistance or encouragement to the Principals in committing the primary causes of action alleged herein, and did so with unlawful intent and knowledge that such parties were perpetrating an unlawful Ponzi scheme.

143.   The Manual Credit Recipients rendered this substantial assistance despite their knowledge that TelexFree's operations constituted an unlawful, unfair, deceptive, and unsustainable Ponzi scheme and financial fraud.

144.   Such substantial assistance included receiving manually issued credits, selling the manual credits to other Participants in furtherance of the Ponzi scheme, and distributing some or all of the proceeds of sale of the manual credits to the Principals or for their benefit.

145.   As a direct result of the perpetration of the TelexFree Ponzi scheme, and the Manual Credit Recipients' substantial assistance in connection therewith, TelexFree incurred liability to Participants for losses incurred in the Ponzi scheme of upwards of $1,000,000,000 or more.

**WHEREFORE**, Stephen Darr as he is the Trustee of the Chapter 11 Estates of the Debtors respectfully prays that the Court enter judgment for him against the Defendant as follows:

1.      On Count One:  (a) avoiding and preserving the Two Year Transfers as fraudulent transfers, (b) directing the Two Year Transfers be set aside and (c) recovering such amounts from the Principals for the benefit of the Estates;

2.      On Count Two:  (a) avoiding and preserving the Two Year Transfers as fraudulent transfers, (b) directing the Two Year Transfers be set aside and (c) recovering such amounts from the Principals for the benefit of the Estates;

3.      On Count Three: (a) avoiding the payments received by the Principals as preferential payments, and (b) recovering the One Year Transfers from the Principals, as follows: $3,252,187.49 from Merrill; $3,785,092.99 from Wanzeler; and $3,658,900 from Costa;

4.      On Count Four, finding that the Principals breached their fiduciary duty of care to TelexFree and awarding damages against the Principals;

5.      On Count Five, finding that the Principals breached their fiduciary duty of good faith to TelexFree and awarding damages against the Principals;

6.      On Count Six, finding that the Principals engaged in looting and corporate waste of the Debtors and awarding damages against the Principals for losses incurred by TelexFree as a result thereof;

7.      On Count Seven, finding that the Defendants engaged in an unlawful civil conspiracy and awarding damages against the Defendants for losses incurred by TelexFree as a result thereof;

8.    On Count Eight, avoiding the Net Winner Payments made to the Related Net Winners within two years of the Petition Date as fraudulent transfers and recovering the Net Winner Payments from the Related Net Winners;

9.    On Count Nine, avoiding the Net Winner Payments made to the Related Net Winners within ninety days of the Petition Date as preferential transfers and recovering the Net Winner Payments from the Related Net Winners;

10.    On Count Ten, finding that the Related Net Winners aided and abetted the commission of tortious conduct by the Principals and awarding damages to the Trustee;

11.    On Count Eleven, finding that the Manual Credit Recipients aided and abetted the commission of tortious conduct by the Principals and awarding damages to the Trustee; and

12.    And for such other and further relief as this Court deems just and proper.

STEPHEN DARR AS HE IS THE
TRUSTEE OF THE CHAPTER 11
ESTATES OF EACH OF THE DEBTORS
By his attorneys,

Charles R. Bennett, Jr. (BBO #037380)
Andrew G. Lizotte (BBO #559609)
Murphy & King, Professional Corporation
One Beacon Street
Boston, MA  02108
(617) 423-0400
ALizotte@murphyking.com

Dated: April 1, 2016
705595

32

# EXHIBIT A

In re: TelexFree, LLC, et al.
Payments to James Merrill

**2 Years**
**4/13/12 - 4/13/14**

| Account | Date | Transaction Type | Num | Name | Amount | Entity |
|---|---|---|---|---|---|---|
| Bank of America 7408 | 1/15/2013 | Check | 1068 | James Merrill | -700.17 | Inc. |
| Bank of America 7408 | 1/15/2013 | Check | 1071 | Brazilian Help, Inc | -149.81 | Inc. |
| Bank of America 7408 | 2/14/2013 | Check | | James Merrill | -7,500.00 | Inc. |
| Bank of America Braz Help 0033 | 2/22/2013 | Credit Card Expense | | US Airway | -396.60 | Inc. |
| Bank of America 7408 | 4/19/2013 | Check | 1108 | James Merrill | -1,011.64 | Inc. |
| 100106 TD Bank 8409 | 9/26/2013 | Check | 3058 | James Merrill | -10,295.02 | LLC |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -3,000,000.00 | Inc. |
| Fidelity Bank 3859 | 1/23/2014 | Check | | James Merrill | -136,200.00 | Inc. |
| 100108 Wells Fargo 0272 | 1/23/2014 | Check | 1020 | Best Buy | -2,036.03 | LLC |
| 100108 Wells Fargo 0272 | 1/30/2014 | Check | 1026 | James Merrill | -80,000.00 | LLC |
| 100108 Wells Fargo 0272 | 2/14/2014 | Check | 1113 | James Merrill | -2,534.50 | LLC |
| PNC Bank | 3/19/2014 | Check | 3111 | James Merrill | -20,000.00 | Financial |
| PNC Bank | 3/28/2014 | Check | 3022 | James Merrill | -110.30 | Financial |

**-3,260,934.07**

**EXHIBIT B**

In re: TelexFree, LLC, et al.
Payments to James Merrill

**1 Year**
**4/13/13 - 4/13/14**

| Account | Date | Transaction Type | Num | Name | Amount | Entity |
|---|---|---|---|---|---|---|
| Bank of America 7408 | 4/19/2013 | Check | 1108 | James Merrill | -1,011.64 | Inc. |
| 100106 TD Bank 8409 | 9/26/2013 | Check | 3058 | James Merrill | -10,295.02 | LLC |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -3,000,000.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Check | 1020 | James Merrill | -136,200.00 | Inc. |
| 100108 Wells Fargo 0272 | 1/23/2014 | Check | 1020 | Best Buy | -2,036.03 | LLC |
| 100108 Wells Fargo 0272 | 1/30/2014 | Check | 1026 | James Merrill | -80,000.00 | LLC |
| 100108 Wells Fargo 0272 | 2/14/2014 | Check | 1113 | James Merrill | -2,534.50 | LLC |
| PNC Bank | 3/19/2014 | Check | 3111 | James Merrill | -20,000.00 | Financial |
| PNC Bank | 3/28/2014 | Check | 3022 | James Merrill | -110.30 | Financial |

**-3,252,187.49**

**EXHIBIT C**

In re: TelexFree, LLC, et al.
Payments to Carlos Wanzeler

2 Years
4/13/12 - 4/13/14

| Account | Date | Transaction Type | Num | Name | Amount | Entity |
|---|---|---|---|---|---|---|
| 200103 Income Propay | 8/28/2012 | Deposit | | Carlos Wanzeler | -49.90 | LLC |
| 200103 Income Propay | 8/28/2012 | Deposit | | Carlos Wanzeler | -49.90 | LLC |
| 100107 Citizens Bank | 4/17/2013 | Check | | Carlos N Wanzeler | -21,349.97 | LLC |
| 100107 Citizens Bank | 5/9/2013 | Check | | Carlos N Wanzeler | -36,800.00 | LLC |
| Travel | 5/12/2013 | Credit Card Expense | | Chanteclair Travel | -453.00 | LLC |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -500,000.00 | LLC |
| Fidelity Bank 3859 | 12/26/2013 | Check | | Carlos Wanzeler | -22,700.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Check | | Carlos Wanzeler | -136,200.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -3,000,000.00 | Inc. |
| Loan from Carlos Wanzeler | 1/8/2014 | Deposit | | | -25.00 | Financial |
| 100108 Wells Fargo 0272 | 2/13/2014 | Check | | American Express | -29,063.19 | LLC |
| 100114 Wells Fargo 8506 | 3/5/2014 | Check | | American Express | -12,738.42 | LLC |
| 100114 Wells Fargo 8506 | 3/5/2014 | Check | | American Express | -20,709.99 | LLC |
| PNC Bank | 3/21/2014 | Check | 3002 | Andreia Bianchi Moreira | -5,053.42 | Financial |

-3,785,192.79

**EXHIBIT D**

In re: TelexFree, LLC, et al.
Payments to Carlos Wanzeler

1 Year
4/13/13 - 4/13/14

| Account | Date | Transaction Type | Num | Name | Amount | Entity |
|---|---|---|---|---|---|---|
| 100107 Citizens Bank | 4/17/2013 | Check | | Carlos N Wanzeler | -21,349.97 | LLC |
| 100107 Citizens Bank | 5/9/2013 | Check | | Carlos N Wanzeler | -36,800.00 | LLC |
| Travel | 5/12/2013 | Credit Card Expense | | Chanteclair Travel | -453.00 | LLC |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -500,000.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Check | | Carlos Wanzeler | -22,700.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Check | | Carlos Wanzeler | -136,200.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -3,000,000.00 | Inc. |
| Loan from Carlos Wanzeler | 1/8/2014 | Deposit | | | -25.00 | Financial |
| 100108 Wells Fargo 0272 | 2/13/2014 | Check | | American Express | -29,063.19 | LLC |
| 100114 Wells Fargo 8506 | 3/5/2014 | Check | | American Express | -12,738.42 | LLC |
| 100114 Wells Fargo 8506 | 3/5/2014 | Check | | American Express | -20,709.99 | LLC |
| PNC Bank | 3/21/2014 | Check | 3002 | Andreia Bianchi Moreira | -5,053.42 | Financial |

-3,785,092.99

**EXHIBIT E**

In re: TelexFree, LLC, et al.
Payments to Carlos Costa

**2 Years**
**4/13/12 - 4/13/14**

| Account | Date | Transaction Type | Num | Name | Amount | Entity |
|---|---|---|---|---|---|---|
| Fidelity Bank 3859 | 12/26/2013 | Journal Entry | | | -3,500,000.00 | Inc. |
| Fidelity Bank 3859 | 12/26/2013 | Check | | Carlos Costa | -158,900.00 | Inc. |
| | | | | | **-3,658,900.00** | |

Prepared by HBA

SUBJECT TO CHANGE