UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE,LLC,<br>TELEXFREE, INC.,<br>TELEXFREE FINANCIAL, INC.,<br><br>      Debtors. | Chapter 11 Cases<br><br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN DARR, CHAPTER 11 TRUSTEE OF THE ESTATES OF EACH OF THE DEBTORS,<br><br>      Plaintiff,<br><br>      v.<br><br>CARLOS WANZELER, JAMES MERRILL, CARLOS COSTA, PRISCILA FREITAS COSTA, FABIO WANZELER, LYVIA MARA CAMPISTA WANZELER, MARIA EDUARDA WANZELER DE ALMEIDA E SOUZA, DRUCILA WANZELER, MARISA MACHADO WANZELER SALGADO, RENATO ALVES, ANA COSTA, NATHANA SANTOS REIS, FABIO FARIA, LELIO CELSO RAMIRES FARIAS, SANDERLY RODRIGUES, VAGNER ROZA, ROBERT BOURGUIGNON, REGINA CELIA, MICHAEL CALAZANS, FABIO DE ARRAZ CRISPIM, SHEFFA MONTOYA, LUIS FERREIRA, SANDRES LEVIS, FEBE WANZELER DE ALMEIDA E SOUZA, BRUNO RANGEL CARDOZO,<br><br>      Defendants. | Adv. Proceeding No.: 16-04032 |

**MEMORANDUM IN SUPPORT OF
DEFENDANT FABIO FARIA'S MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 12(b) and Bankruptcy Rule 7012(b), Defendant Fabio Faria respectfully requests that this Court dismiss the claims against him (Counts Seven and Eleven). Plaintiff Stephen Darr, Chapter 11 Trustee of the Debtors' Estates ("Trustee") alleges in conclusory terms and without any particularity that Mr. Faria was a member of a civil conspiracy to commit fraud (Count Seven) and aided and abetted unspecified "tortious conduct" of Wanzeler, Merrill, and Costa, the three men alleged by the Trustee to be the architects of TelexFree (Count Eleven). The Complaint fails to state a claim for which relief can be granted because it fails to sufficiently allege Mr. Faria's knowledge or participation in the alleged fraud. Nor does the Complaint satisfy any of the elements of conspiracy against Mr. Faria. Indeed, Mr. Faria's name only surfaces once in the body of the Complaint as having received "Manual Credits," and that lone reference fails to allege facts sufficient to find that Mr. Faria engaged in a conspiracy. The solitary reference to Mr. Faria also falls well short of meeting Rule 9(b)'s particularity requirement. Accordingly, the Complaint should be dismissed as to Mr. Faria.

## BACKGROUND

This case is a sister case to a proposed class-action suit brought by the Trustee. (*See Darr v. Argueta et al.*, Adv. Pro. No.: 16-04006, hereinafter "Related Class Action"). In that matter, the Trustee has moved to certify a class of defendants—a class that the Trustee will contend should include Mr. Faria if it can be shown that he profited from any involvement in Debtors' "Ponzi scheme." The question before this Court is whether

2

the Trustee can proceed under a separate theory against Mr. Faria in the absence of any allegations that Mr. Faria knowingly participated in the alleged fraud.

The Trustee has brought Count Seven for civil conspiracy and Count Eleven for aiding and abetting the commission of tortious conduct against the Manual Credit Recipients, including Mr. Faria. (Complain at ¶¶ 119-123, 141-145.).[1] Both counts are non-core proceedings, as these are state law claims that do not fall under 28 U.S.C. § 157(b)(2)(A), (F), (H), or (O). Neither count seeks to "administer the estate" (A), recover preferences (F), recover fraudulent conveyances (H), or adjust the "debtor-creditor" relationship (O).

## ALLEGED FACTS[2]

The Trustee brings this case alleging that the individuals who controlled TelexFree looted the company for their own benefit. The Trustee has created three tiers of defendants that are supposedly at the top of the pyramid: (a) the "Principals"—Carlos Wanzeler, James Merrill, and Carlos Costa—who are the alleged masterminds of the operation; (b) the "Related Net Winners"—Fabio Wanzeler, Lyvia Mara Campista Wanzeler, Maria Eduarda Wanzeler de Almeida e Souza, Ducila Wanzeler, Marisa Machado Wanzeler Salgado, Priscila Freitas Costa, and Ana Costa—who are relatives of the Principals and notably bear the same last name; and (c) the "Manual Credit

---

[1] Counts One through Six are brought against the Principals; Counts Eight through Ten are brought against the Related Net Winners; and Count Seven is brought against all Defendants.

[2] As it pertains to him, Mr. Faria disputes nearly all of the allegations in the Complaint. However, because well-pleaded factual allegations are to be taken as true for purposes of a motion to dismiss, Mr. Faria will refrain from seeking to offer refutations at this time.

3

Recipients," which includes Mr. Faria and 15 other individuals who are alleged to be "relatives or surrogates." (Complaint, at 4; Complaint, ¶¶ 63-76, 77-81, and 82.) Mr. Faria is not a relative of any of the Principals, and the Complaint does not allege that he ever met or spoke to the Principals or had any type of relationship. Nor does the Complaint specify what is meant by the term "surrogate."

**The Alleged Scheme**

The Principals formed TelexFree and its related entities to operate as a multi-level marketing company engaged in the sale of voice over internet protocol (VoIP) services. (Complaint, at 2.) During the course of the Debtors' operations, the Principals began recruiting customers through ads on the internet. (Complaint, ¶ 46.) Around this time, April 2012, the Debtors began raising money from individuals who became members of TelexFree's multi-level marketing platform (referred to in the Complaint as "Participants") in the United States. (Complaint, ¶ 47.) The Debtors' were in the business of providing a VoIP service to customers at $49.90 per month. (Complaint, ¶ 48) The customer would download the software to their computers, enabling them to make phone calls using their computers. (Complaint, ¶ 48.) The phone calls would be relayed through the Debtors' servers, located in Marlborough, MA. (Complaint, ¶ 48.)

The Trustee alleges that while the Debtors purported to be a VoIP service provider, the Principals devised a plan to make millions through a Ponzi scheme. (Complaint, ¶ 49.) The scheme would work as follows: a participant would become a member of TelexFree by purchasing a "membership" for either $339 per year or $1,425 per year. (Complaint, ¶ 51.) The Participants were given certain incentives to purchase

4

membership plans and VoIP packages, to post advertisements, and to sell membership plans. (Complaint, ¶ 52.) For example, a participant was promised $100 per week if he placed regular internet ads each day. (Complaint, ¶ 51.) The Debtors also issued credits to a Participant's "user account" for the sale of membership plans and the establishment of new User Accounts. (Complaint, ¶ 52.) Participants would also get credits added to their User Accounts for selling VoIP packages. (Complaint, ¶ 53.) In other words, a Participant could earn credits to his account by (1) placing internet ads, (2) selling membership plans, or (3) selling VoIP packages. (Complaint, ¶¶ 51-53.) Every membership plan included either ten or fifty, one-month VoIP packages. (Complaint, ¶ 51.)

When a participant purchased a membership plan, he or she would be invoiced either $339 or $1,425, as described above. (Complaint, ¶ 55.) These invoices could be satisfied by paying cash directly to the Debtors. (Complaint, ¶ 55.) Additionally, the invoices could be satisfied by "monetiz[ing] accumulated credits by recruiting a Participant to join the Debtors' scheme and using his/her accumulated credits to satisfy the invoice for the later Participant's membership plan in exchange for the membership fee from the new participant. (Complaint, ¶ 55.) Or, more simply, the recruiting participant would use credits in his account to pay the new participant's invoice and the new participant would pay cash to the recruiting participant. (Complaint, ¶ 55.) This is referred to as a "Triangular Transaction." (Complaint, ¶ 55.) The Principals devised this scheme in such a manner so as to create a market for trading in TelexFree credits, since

5

credits were needed to implement Triangular Transactions and credits could be converted into cash on demand.

### Manual Credits

According to the Complaint, the Principals added credits to certain Participants' User Accounts without a related purchase of a membership plan or the placement of advertisements. The Trustee refers to these as "manual credits," as distinct from automatic credits, presumably because they were not earned in the ordinary course of TelexFree's operations. (Complaint, ¶ 58.) The Complaint alleges that these "manual credits" were issued to the "Manual Credit Recipients" without any consideration. (Complaint, ¶ 58.) The Complaint also alleges that "many" of these manual credits were then sold to other Participants, generating additional money for the Principals—presumably in the form of kickbacks although the Complaint is silent on this point. All the Complaint alleges is that the Principals used the "manual credit" system to derive "additional compensation" from the TelexFree scheme. (Complaint, ¶ 82.)

### Allegations against Mr. Faria

The substantive allegations against Mr. Faria are confined to a single, short paragraph. Mr. Faria is alleged to have received manual credits totaling $990,702. (Complaint, ¶ 82(iv).) Mr. Faria is also alleged to have "monetized *up to* $990,702 of these manual credits" for the benefit of himself and the Principals. (Complaint, ¶ 82(iv).) The Complaint alleges nothing further about Mr. Faria. He is not alleged to have known Carlos Costa, Carlos Wanzeler, James Merrill, or any of their relatives. And finally, Complaint makes no allegations concerning how, when, with whom, or to what

6

extent Mr. Faria allegedly "monetized" manual credits, leaving open the possibility that he didn't monetize any of them. And there is no suggestion that Mr. Faria in any way gave the Principals a kickback of any form if indeed he received any proceeds.

## ARGUMENT

The Complaint makes clear that Carlos Costa, Carlos Wanzeler, James Merrill, and their relatives were the principal beneficiaries of TelexFree, and the system of "manual credits" was simply another way that the principals lined their pockets. Where the Complaint fails as a matter of law is its attempt to link Mr. Faria to the top of the so-called pyramid, when there are simply no allegations, credible or otherwise, that he had any involvement in fraudulent scheme or any tortious conspiracy. As the Supreme Court held in *Bell Atlantic v. Twombly*, such conclusory attempts to allege a conspiracy without an actual basis to believe a conspiracy exists are insufficient. 550 U.S. 544, 555 (2007). Not only are there no allegations that tie Mr. Faria to any conspiracy, there are simply no allegations that establish the basis to believe that he engaged in fraud or aided and abetted others in doing so. Because the Complaint is lacking in a plausible basis for recovery from Mr. Faria or the requisite particularity under Rule 9(b), the Complaint against him must be dismissed.

### A. The Rule 12(b) Standard and Heightened Pleading of Rule 9(b)

Under Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b), a court must dismiss a Complaint that fails to state a claim for which relief can be granted. The oft-cited Supreme Court decision, *Ashcroft v. Iqbal* states the standard as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)] A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556 … The Plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–9 (2009). Under this standard, "[r]ecitations of the elements of a cause of action supported only by legal conclusions are insufficient to withstand a motion to dismiss. *Romano v. Defusco (In re Defusco)*, 500 B.R. 664, 668 (Bankr. D. Mass. 2013). Complaints must set forth factual allegations regarding *each* material element under an actionable legal theory, and those that fail to do so must be dismissed. *Gagliardi v. Sullivan*, 513 F. 3d 301, 305 (1st Cir. 2008).

On the subject of conspiracy, *Twombly* is particularly instructive. In that case, the Supreme Court held that allegations of conduct "consistent with" a conspiracy, without more, are insufficient to plead a conspiracy. *Twombly*, 550 U.S. 554, 555 (2007).  Even at the pleading stage, there must be allegations suggesting that an actual agreement to engage in conspiracy exists, otherwise "without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Twombly*, 550 U.S. at 557.

Here, as in *Twombly*, no agreement is alleged. Indeed, there is not even a reasonable inference of a tacit agreement. *See Id.* For this reason, the Court must apply *Twombly* and

8

"insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.*, at 558. Because the Trustee has not alleged Mr. Faria's involvement in a conspiracy in anything other than conclusory terms, the claims must be dismissed.

To the extent that the Trustee also brings fraud claims, those are subject to the heightened pleading requirements of Rule 9(b), made applicable by Bankruptcy Rule 7009, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." A complaint based in fraud must state with "particularity the circumstances constituting fraud to comply with the more rigid standard of pleading required under Rule 9(b)." *Durns v. Dawson (In re Dawson)*, 264 B.R. 13, 16 (Bankr. N.D. Iowa 2001). And while the Trustee may argue for a more relaxed application[3] of the particularity requirement, the application of Rule 9(b) is still not without teeth; the allegations must be specific enough to ensure a defendant is protected from unfair surprise, strike suits and damage to reputation. *Honey Dew Assocs. v. Monaco (In re Monaco)*, 347 B.R. 454, 458 (Bankr. D. Mass. 2006). The lack of even minimal detail against Mr. Faria means that all fraud-based claims against him must be dismissed.

---

[3] Because the Trustee is uniquely in possession of the Debtor's data, while Mr. Faria is locked out of his user account, the rationale for a relaxed pleading requirement is not present in this case. *See Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin. Partners, L.P.)*, 488 B.R. 758, 767 (Bankr. S.D. Fla. 2013).

9

### B. Count Seven Should be Dismissed against Mr. Faria Because it Fails to Plead the Elements of Conspiracy, Specifically An Agreement

The Trustee alleges that Mr. Faria was a part of the civil conspiracy, but nowhere does it allege that Mr. Faria was part of any agreement or common design. A claim for civil conspiracy requires that there be: (1) a common design or agreement between two or more people; (2) to commit a wrongful act; and (3) some tortious act[4] done in furtherance of the agreement. *Aetna Casualty Surety Company v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994).

Here, the only specific allegations against Mr. Faria are that he was a recipient of manual credits. (Complaint, ¶ 82(iv).) The Complaint makes no allegation of an agreement involving Mr. Faria, nor can one be inferred simply from the allegations. There is certainly no allegation as to *when*, if ever, Mr. Faria joined the conspiracy, what acts he *agreed* to do in furtherance of the conspiracy, the person or persons with whom such agreement was reached, and what acts he actually *performed* in furtherance of the agreement. Indeed, the Complaint only hazards a guess[5] that Mr. Faria even monetized any of the manual credits he is alleged to have received.  Thus, we are left to speculate that Mr. Faria somehow acted in concert with the alleged architects of the manual credit system, without any claim that he sold any manual credits or that he directed the

---

[4] There is an exceptional circumstance—seldom found in the last 100 years—where mere force of numbers acting in unison may make a wrong, even in the absence of an underlying tort. *See Neustadt v. Employers' Liability Assurance Corp.*, 21 N.E.2d 538, 540–41, 303 Mass. 321, 325 (1939). In such cases, there is an exceptional level of physical "coercion" or "threats" that is not alleged here. *Id.*

[5] The Complaint alleges that Mr. Faria monetized "*up to* $990,702" of the credits he supposedly received, an expression of a ceiling—not a floor—that leaves open the possibility that Mr. Faria monetized *none* of the credits. (Complaint, ¶ 82(iv) (emphasis added))

proceeds from such sales to the Principals. At best, the Complaint merely alleged conduct by Mr. Faria that could be consistent with, but just as easily could be inconsistent with, a conspiracy. Such allegations are, as a matter of law, insufficient to expose a defendant to far-reaching and expensive discovery and must be dismissed. *See Twombly*, 550 U.S. at 557.

### C. Count Eleven Must Be Dismissed against Mr. Faria Because the Trustee Has Failed to Plead the Necessary Elements of Aiding and Abetting the Commission of a Tort

Count Eleven contains a vague claim that Mr. Faria aided and abetted the commission of an unspecified tort. But the Complaint fails to set forth sufficient factual allegations to make out each of the elements of the aiding and abetting claim. To show a defendant is liable for such a claim, the Trustee "must allege facts plausibly suggesting that: (1) some other party "committed the relevant tort," (2) the [defendant] knew that the other party "was committing the tort," and (3) the [defendant] "actively participated in or substantially assisted in [the] commission of the tort." *Baker v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 2016 Mass. Super. LEXIS 17, *26-27 (Mass. Super. Ct. 2016) (citing *Go-Best Assets Ltd. v. Citizens Bank of Massachusetts*, 463 Mass. 50, 64, 972 N.E.2d 426 (2012)).

The Complaint attempts to pin liability on Mr. Faria for the alleged wrongdoing of others merely because the Principals gave Mr. Faria "manual credits," without alleging that Mr. Faria had knowledge of or participated in the commission of even a single tort. Such allegations couldn't even be characterized as conclusory, since the Trustee has failed to provide Mr. Faria with even conclusory information to put him on notice of the

specific claim against him. The allegations are so bare-bones that they fall short of the plausibility standard.  Mr. Faria must guess what he did to assist the Principals, and what tort the Trustee contends was committed. The Complaint's failure to specify the underlying tort is fatal.  But even if the Trustee sufficiently pointed to an underlying tort, the Trustee still has the burden of "plausibly suggesting" facts that support that Mr. Faria knew about the Principals' tortious scheme and that Mr. Faria "actively participated in it such that he or she could not reasonably be held to have acted in good faith." *Id.* (citing *Spinner v. Nutt*, 417 Mass. 549, 556, 856 N.E.2d 426 (Mass. 1994) (affirming Rule 12(b)(6) dismissal).

The Complaint fails on both accounts.  First, with respect to knowledge, the Complaint makes no claim that Mr. Faria knew that the Principals were breaching their fiduciary duties or were engaged in fraud. Indeed, the Complaint doesn't even allege that Mr. Faria knew the Principals at all! The only plausible reading of the Complaint is that Mr. Faria was unwittingly ensnared in the alleged fraud of Costa, Wanzeler, and Merrill. Because there is no allegation that Mr. Faria had actual knowledge of the Principal's tortious conduct, the Complaint must fail. *See Mukamal v. BMO Harris Bank N.A. (In re Palm Beach Fin. Partners, L.P.)*, 488 B.R. 758, 774 (Bankr. S.D. Fla. 2013) (dismissing trustee's aiding and abetting fraud claim where trustee failed to adequately allege that defendant had actual knowledge of the Ponzi scheme).[6]

---

[6] To the extent that Complaint premises the aiding and abetting claim on "looting," it still fails, as there is no allegation that Mr. Faria had knowledge of the plans to transfer money out of the Debtors. (Complaint, ¶¶89-105, 114-118.)

12

Further, the Complaint does not contain sufficient allegations regarding how Mr. Faria "actively participated in or substantially assisted in [the] commission of the tort." In fact, even in the limited paragraphs discussing the Manual Credit Recipients as a group of alleged tortfeasors, the Complaint does not contain allegations that put Mr. Faria or the other Manual Credit Recipients on notice as to which transactions aided and abetted the Principals' torts or how the receiving of and subsequent sale of some of the manual credits constituted aided and abetted. Instead, the Complaint contains a mere formulaic recitation of the bare elements of an aiding and abetting claim. Without more, Count Eleven against Mr. Faria must fail.

### D. To the Extent that Both Count Seven and Count Eleven Are Premised on Fraud, They Must Be Dismissed against Mr. Faria Because They Lack the Requisite Particularity of Rule 9(b)

While conspiracy and aiding and abetting are different torts, *see Official Comm. of Unsecured Creditors v. Foss (In re Felt Mfg. Co.)*, 371 B.R. 589, 615 (Bankr. D.N.H 2007), they both are held to the heightened pleading standard of Rule 9(b) if they are predicated on fraud. *See Regis Techs., Inc. v. Oien (In re Oien)*, 404 B.R. 311, 317-18 (Bankr. N.D. Ill. 2009).

Indeed, Courts routinely dismiss conspiracy claims based only on general allegations of fraudulent behavior, without any particularity as to the times, locations, or identities of parties involved in the fraud. *See e.g. Liburd-Chow v. Nationstar Mortg., LLC (In re Liburd-Chow)*, 434 B.R. 863, 870 (Bankr. N.D. Ill. 2010). Similarly, a complaint that alleges no basis for concluding that a defendant acted "wittingly" to further a conspiracy fails to meet the heightened pleading requirement and must be dismissed,

even if the fraudulent scheme itself is sufficiently pleaded with respect to other defendants. *See Kore Holdings, Inc. v. Rosen (In re Rood)*, 426 B.R. 538, 554-60 (D. Md. 2010) ("While the complaint sets forth specific allegations of fraudulent acts with regard to the fraudulent scheme, clearly demonstrating the role of various players within the conspiracy, the insufficiency of the allegations with respect to the [parents of the debtor's] involvement is glaring").

"Aiding and abetting" fraud claims are similarly subject to Rule 9(b), and where specific allegations of "active participation" are lacking, such claims must also be dismissed. *See In re D.H. Overmeyer Telecasting Co.*, 47 B.R. 823, 825 (Bankr. N.D. Ohio 1985) (holding that allegations in a complaint that the counsel for the creditors' committee in a Chapter 11 case "actively participated" in the fraud in stacking the committee or otherwise "aided and abetted" the fraud were insufficient under Rule 9(b) due to the lack of the required specificity); *see also In re Lois/ United States*, 283 B.R. 382, 387 (Bankr. S.D.N.Y. 2002).

Here, the Complaint has failed to adequately allege the specifics of Mr. Faria's participation in the fraud, either as a co-conspirator or as an abettor. There is no allegation that Mr. Faria *agreed* to conspire with the Principals or was *actively participating* in their allegedly fraudulent scheme. For this reason, both Counts Seven and Eleven should be dismissed as they relate to fraud.

14

## CONCLUSION

For the foregoing reasons, Defendant Fabio Faria respectfully requests that this Court dismiss all the claims against him with prejudice.

          Respectfully submitted,

          FABIO FARIA

          By his counsel,

Dated: May 16, 2016     /s/ *Ilyas J. Rona*
          Ilyas J. Rona, Esq. (BBO# 642964)
          MILLIGAN RONA DURAN & KING LLC
          50 Congress Street, Suite 600
          Boston, MA 02109
          Telephone: (617) 395-9570
          Email: ijr@mrdklaw.com

## CERTIFICATE OF SERVICE

I, Ilyas J. Rona, hereby certify that I have caused a copy of the Memorandum in Support of Defendant Fabio Faria's Motion to Dismiss to be served on counsel for the Trustee and all registered electronic filers appearing in this case Court's CM/ECF system.

Dated: May 16, 2016     /s/ *Ilyas J. Rona*
          Ilyas J. Rona, Esq.