# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE, LLC,<br>TELEXFREE, INC. and<br>TELEXFREE FINANCIAL, INC.,<br><br>Debtors. | Chapter 11 Cases<br><br>14-40987-MSH<br>14-40988-MSH<br>14-40989-MSH<br><br>Jointly Administered |
| STEPHEN DARR, AS HE IS THE TRUSTEE OF THE CHAPTER 11 ESTATES OF EACH OF THE DEBTORS,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS WANZELER, JAMES MERRILL, CARLOS COSTA, PRISCILA FREITAS COSTA, FABIO WANZELER, LYVIA MARA CAMPISTA WANZELER, MARIA EDUARDA WANZELER DE ALMEIDA E SOUZA, DRUCILA WANZELER, MARISA MACHADO WANZELER SALGADO, RENATO ALVES, ANA COSTA, NATHANA SANTOS REIS, FABIO FARIA, LELIO CELSO RAMIRES FARIAS, SANDERLY RODRIGUES, VAGNER ROZA, ROBERT BOURGUIGNON, REGINA CELIA MANHAES DA ROZA REGINA CELIA, MICHAEL CALAZANS, FABIO DE ARRAZ CRISPIM, SHEFFA MONTOYA, LUIS FERREIRA, SANDRES LEVIS, FEBE WANZELER DE ALMEIDA E SOUZA, BRUNO RANGEL CARDOZO,<br><br>Defendants. | Adversary Proceeding<br>No. 16-4032 |

## PLAINTIFF TRUSTEE'S OPPOSITION TO
## DEFENDANT FABIO FARIA'S MOTION TO DISMISS

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**INTRODUCTION** ........................................................................................................................ 1

**FACTS** .......................................................................................................................................... 2

**ARGUMENT** ................................................................................................................................ 4

    I.    PLEADING STANDARD. ............................................................................................. 4

    II.   PLAINTIFF HAS STATED A CLAIM AGAINST FARIA
         FOR CONSPIRACY (COUNT VII). ............................................................................. 5

    III.  PLAINTIFF HAS STATED A CLAIM AGAINST FARIA
         FOR AIDING AND ABETTING COMMISSION OF
         TORTIOUS CONDUCT (COUNT XI). ........................................................................ 7

    IV.  PLAINTIFF NEED NOT STATE EXACT DAMAGES AT
         THE PLEADING STAGE. ........................................................................................... 10

    V.   THE COMPLAINT PROVIDES SUFFICIENT NOTICE
         UNDER RULE 9(b). ..................................................................................................... 11

**CONCLUSION** .......................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Aetna Cas. Sur. Co. v. P & B Autobody,*
   43 F.3d 1546 (1st Cir. 1994) ................................................................................. 5, 6, 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................................... 4

*Bell Atlantic v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................. 4, 6

*Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC,
   2010 WL 1526394 (N.D. Cal. Apr. 15, 2010) ............................................................ 9

*Brockton Power LLC v. City of Brockton,*
   948 F. Supp. 2d 48 (D. Mass. 2013) ........................................................................... 6

*Cas. & Sur. Co. v. Leahey Constr. Co.,*
   219 F.3d 519 (6th Cir. 2000) ........................................................................................ 8

*English v. BAC Home Loans Servicing LP*, No. 1:15-CV-345-JDL,
   2016 WL 741344 (D. Me. Jan. 29, 2016) ................................................................. 10

*Fleming v. Dane,*
   304 Mass. 46 (1939) ..................................................................................................... 5

*Gorsuch v. Maloney*, No. 10-CV-495-JD,
   2011 WL 2491312 (D.N.H. June 21, 2011) ............................................................... 6

*In re NE 40 Partners, Ltd.,*
   411 B.R. 352 (Bankr. S.D. Tex. 2009) ..................................................................... 11

*In re: Liberty State Benefits of Delaware, Inc.*,
   541 B.R. 219 (Bankr. D. Del. 2015) ....................................................................... 4, 5

*Kyte v. Philip Morris Inc.,*
   408 Mass. 162, 556 N.E.2d 1025 (1990) .................................................................... 6

*Mansor v. JPMorgan Chase Bank, N.A.*, No. CV 12-10544-JGD,
   2016 WL 1676482 (D. Mass. Apr. 26, 2016) ..................................................... 7, 8, 9

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale,*
   567 F.3d 8 (1st Cir. 2009) ............................................................................................ 4

*Neilson v. Union Bank of California, N.A.*,
  290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................................. 8, 11

*Okmyansky v. Herbalife Intern'l Of America, Inc.*,
  415 F.3d 154 (1st Cir. 2005) ......................................................................................... 5

*Payton v. Abbott Labs,*
  512 F. Supp. 1031 (D. Mass. 1981) ............................................................................. 6

*Rederford v. U.S. Airways, Inc.,*
  589 F.3d 30 (1st Cir. 2009) ........................................................................................... 4

*Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. CIV.A. 10-12043-GAO,
  2012 WL 1065578 (D. Mass. Mar. 27, 2012) ............................................................. 6

*U.S. ex rel. Franklin v. Parke–Davis, Div. of Warner–Lambert Co.*,
  147 F. Supp. 2d 39 (D. Mass. 2001) ............................................................................ 4

*United Air Lines, Inc. v. Gregory*,
  716 F. Supp. 2d 79 (D. Mass. 2010) ....................................................................... 4, 9

*W. Reserve Life Assur. Co. of Ohio v. ADM Associates, LLC*,
  793 F.3d 168 (1st Cir. 2015) ........................................................................................ 7

*W. Reserve Life Assur. Co. of Ohio v. Caramadre*,
  847 F. Supp. 2d 329 (D.R.I. 2012) .............................................................................. 7

*W. Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F. Supp.
  2d 270 (D.R.I. 2010) ............................................................................................. 7, 11

**Other Authorities**

C. Wright & A. Miller, 5A *Federal Practice & Procedure*
  §§ 1310–11 (3d ed. 2004) ........................................................................................... 10

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 4, 8, 11, 12

Fed. R. Civ. P. 9(g) ........................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 4, 10

**INTRODUCTION**

Plaintiff Stephen Darr, as the duly appointed and acting trustee (the "Trustee" or "Plaintiff") of the Chapter 11 bankruptcy estates of TelexFree, Inc., TelexFree, LLC, and TelexFree Financial, Inc. (collectively, the "Debtors" or "TelexFree"), hereby opposes Defendant Fabio Faria's ("Faria") Rule 12(b)(6) motion to dismiss. Faria does not dispute that the Complaint adequately states claims under Counts One through Six and Eight through Ten. Faria challenges only the Counts that include him: Seven (Civil Conspiracy against all Defendants) and Eleven (Aiding and Abetting Commission of Tortious Conduct against Manual Credit Recipients).

The Complaint alleges that Defendants James Merrill, Carlos Wanzeler, and Carlos Costa (collectively, the "Principals") operated a massive Ponzi scheme and pyramid scheme ("Ponzi scheme") under the guise of a multi-level marketing company engaged in the sale of voice over internet protocol services that left Debtors with liabilities of upwards of $1,000,000,000. Participants in the Debtors' membership program ("Participants"), after paying a membership fee, could complete certain incentivized activities to earn "credits", which in turn could be redeemed for cash. However, certain Participants, including Faria, facilitated the Ponzi scheme by knowingly obtaining and using/monetizing "manual credits", which were credits provided by the Principals for no consideration. Faria, who received $990,702.00 worth of manual credits, knowingly used them to generate additional money for the Principals' and his own benefit, meanwhile expanding the Debtors' liability when the manual credits themselves were redeemed, and ultimately leading to the collapse of the Ponzi scheme.

With respect to Faria's Rule 12(b)(6) challenges to Counts VII and XI, the salient issue for both theories of liability is whether the Complaint alleges sufficient facts to establish Faria's actual knowledge of the Ponzi scheme. The Complaint's allegations detail both the manner in

which the Ponzi scheme operated and Faria's knowing facilitation of the scheme. The substance of Faria's own brief reveals that he understands the specific factual allegations against him and that he has sufficient notice to prepare a responsive pleading. Pursuant to the applicable relaxed pleading standard, the Complaint adequately states claims under both Counts VII and XI. Accordingly, Faria's motion to dismiss should be denied.

## FACTS

The Principals formed the Debtors and related entities to operate purportedly as a multi-level marketing company engaged in the sale of voice over internet protocol ("VoIP") software packages, which allowed phone calls to be made over the internet through a computer. Complaint ("Compl."), ¶¶ 2, 48. However, the sale of VoIP services was merely a pretense for a Ponzi scheme that focused on recruiting new Participants and paying earlier Participants with money received from later Participants. *Id*. at ¶¶ 49, 53. As a result, a few favored Participants who facilitated the scheme, including Faria, received more money than they initially invested ("Net Winners"), whereas the majority of Participants lost their entire investment when the scheme inevitably collapsed. *Id*. at ¶¶ 78, 79.

In summary, the Ponzi scheme operated as follows. Participants purchased a membership plan for a $50 membership fee plus a contract fee (which together could be paid for with cash or "credits", described *infra*), in exchange for which they received a number of VoIP packages to sell and a number of weekly internet ads (advertising Debtors) to place.[1] *Id*. at ¶ 51. Each time a Participant purchased a membership plan, a "User Account" was established to track the Participant's activity in the scheme. *Id*. at ¶ 52. A User Account received "credits" in exchange for the Participant 1) selling VoIP packages, 2) selling membership plans, and/or 3) placing the

---

[1] The Debtors initially offered (until March 9, 2014) two different tiers of contract plans which operated in the same fashion, differing only in the amount of the contract fee and the specific amount of incentives. *See* Compl., ¶ 51.

2

requisite weekly number of ads. *Id*. at ¶¶ 51-53. In practice, the VoIP packages themselves were rarely sold or used. *Id*. at ¶ 53.

A market existed for credits, which could be redeemed for cash from the Debtors, transferred to another User Account, or applied to satisfy a membership plan invoice for an entirely separate User Account. *Id*. at ¶¶ 54, 57. An existing Participant could also monetize accumulated credits through a "Triangle Transaction" by recruiting a new Participant, satisfying the new Participant's membership plan invoice with accumulated credits, and accepting a payment in cash directly from the new Participant for the value of the credits.[2] *Id*. at ¶ 55. Over the course of the Debtors' operations, the majority of membership fees were paid through Triangle Transactions. *Id*. at ¶ 56.

Additionally, the Principals regularly issued "manual credits" to certain favored Participants ("Manual Credit Recipients"), which could be used/monetized like normal credits, but were provided for no consideration, independent of the Manual Credit Recipients' completion of incentivized activities. *Id*. at ¶ 58. When the Manual Credit Recipients subsequently monetized the manual credits, they generated cost-free cash for themselves and the Principals, but exponentially expanded the Debtors' liability when the newly minted manual credits themselves were redeemed. *Id*.

Faria was a Manual Credit Recipient who received manual credits totaling $990,702 from the Principals, at least some of which he then monetized for the Principals' and his own benefit. *Id*. at ¶ 82(iv). Faria profited from his facilitation of the fraudulent scheme as a Net Winner, leaving Debtors with liabilities to Participants of upwards of $1,000,000,000. *Id*. at ¶¶ 79, 82(iv), 123, 145.

---

[2] In other words, the new Participant would pay cash directly to the recruiting-Participant rather than the Debtor.

3

**ARGUMENT**

    I.   PLEADING STANDARD.

In deciding a motion to dismiss under Rule 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, a court must review the complaint and the documents attached to it to determine if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)); *Rederford v. U.S. Airways, Inc.,* 589 F.3d 30, 35 (1st Cir. 2009). Accordingly, a complaint must include more than a rote recital of the elements of a cause of action; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Fed. R. Civ. P. 9(b) requires a party to plead claims alleging fraud with particularity, a requirement that applies in this Circuit not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009). However, "strict application of Rule 9(b) may be relaxed in certain circumstances." *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 86 (D. Mass. 2010) ("For example, when the underlying facts are 'peculiarly within the defendants' control,' less specificity may be required pending discovery." (*quoting U.S. ex rel. Franklin v. Parke–Davis, Div. of Warner–Lambert Co.*, 147 F. Supp. 2d 39, 47 (D. Mass. 2001))). Bankruptcy courts have applied a relaxed Rule 9(b) pleading standard "for bankruptcy trustees bringing claims of fraud on behalf of the debtor and its creditors." *In re: Liberty State Benefits of Delaware, Inc.*, 541 B.R. 219, 233 (Bankr. D. Del. 2015) (and cases cited). "The policy justification for reducing the burden is that as a third party outsider, a trustee must rely on secondhand knowledge for the benefit of the estate and all of its creditors." *Id.* (internal citations and quotations omitted). "Moreover, as the purpose of the heightened pleading standard is to

protect a defendant from the burdens of discovery associated with a fraud claim, courts have relaxed this standard in cases where discovery had already been completed." *Id*. (applying relaxed standard to trustee's fraud claims where "the Trustee has already conducted some discovery relating to the four transactions, [and] the Court finds this policy concern to be particularly relevant.").

## II. PLAINTIFF HAS STATED A CLAIM AGAINST FARIA FOR CONSPIRACY (COUNT VII).

Massachusetts law[3] recognizes two types of causes of action for civil conspiracy. The first, referred to as "true conspiracy" is a "rare" and "very limited" cause of action and is not at issue here.[4] *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir. 1994). The Complaint alleges the second type of conspiracy claim in Count VII, which is "more akin to a theory of common law joint liability in tort." *Id*. at 1564. To state a claim for this type of conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id*. Of these elements, Faria challenges the sufficiency of the Complaint's factual allegations to support the existence of an agreement.[5]

It is well-established that "[t]he plaintiff need not prove the existence of an agreement by direct evidence but the agreement may be inferred from conduct of the parties suggesting that

---

[3] The Court need not make a definitive choice of law determination at this time, where the choice of law determination is unlikely to alter the disposition of the relevant legal questions. *See Okmyansky v. Herbalife Intern'l Of America, Inc.*, 415 F.3d 154, 158 (1st Cir. 2005). In any event, both parties cite Massachusetts law.

[4] To state a claim for true conspiracy, the plaintiff must allege that by "mere force of numbers acting in unison," the defendants exercised "some peculiar power of coercion of the plaintiff which any individual standing in a like relation to the plaintiff would not have had." *Fleming v. Dane,* 304 Mass. 46, 50 (1939) (citations omitted).

[5] Although the headings in Faria's brief claim that Plaintiff has "failed to plead the necessary elements" of these causes of action, the substance of the brief challenges only the sufficiency of the supporting factual allegations. In any event, there can be no dispute that the paragraphs under the Counts facially plead the elements of the respective causes of action.

5

they had an implied meeting of the minds." *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. CIV.A. 10-12043-GAO, 2012 WL 1065578, at *25 (D. Mass. Mar. 27, 2012) (*citing Payton v. Abbott Labs,* 512 F. Supp. 1031, 1035 (D. Mass. 1981)). *See also Aetna*, 43 F.3d at 1562 ("it is not necessary for the conspiratorial agreement to be express, so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved."); *accord Brockton Power LLC v. City of Brockton*, 948 F. Supp. 2d 48, 76 (D. Mass. 2013); *Gorsuch v. Maloney*, No. 10-CV-495-JD, 2011 WL 2491312, at *3 (D.N.H. June 21, 2011) ("The agreement that rests at the heart of a conspiracy is seldom susceptible of direct proof: more often than not such an agreement must be inferred from all the circumstances." (internal citations and quotations omitted)); *Kyte v. Philip Morris Inc.,* 408 Mass. 162, 556 N.E.2d 1025, 1035 (1990) (agreement may be "implied" or "inferred due to the concerted action of the parties").

  Here, as a Participant in the Debtors' membership program, Faria understood that credits were ordinarily only provided for a Participant's completion of incentive activities, namely: 1) selling VoIP packages, 2) selling membership plans, and/or 3) placing the requisite weekly number of ads. *Id*. at ¶¶ 51-53. Nonetheless, Faria, as a Manual Credit Recipient, obtained manual credits totaling $990,702 from the Principals for no consideration and without regard to his incentive activities. *Id*. at ¶ 82(iv). The Complaint alleges more than mere "parallel conduct that could just as well be independent action." *Twombly,* 550 U.S. at 557. Faria was not "unwittingly ensnared" in the Principals' Ponzi scheme; he was an active participant. Faria accepted the manual credits—credits which actually-innocent Participants never received—from the Principals knowing that he had paid no value in exchange. Compl., ¶ 82(iv). Faria then knowingly monetized at least some of the manual credits that he had received for free for the

6

direct benefit of the Principals and himself, thereby expanding the Debtors' liability. *Id*. Faria could not have taken these actions without knowing that his conduct was furthering the fraudulent scheme, and he agreed to do so nonetheless. *W. Reserve Life Assur. Co. of Ohio v. Conreal LLC*, 715 F. Supp. 2d 270, 282-83 (D.R.I. 2010)[6] ("As in a criminal conspiracy, participants in a civil conspiracy need not know everything their coconspirators know, or participate in every wrongful act, to be found liable for the ultimate fraud." (citation omitted)). The Complaint's allegations are sufficient to support the reasonable inference that Faria and the Principals were acting pursuant to an agreement to further the Ponzi scheme.

### III. PLAINTIFF HAS STATED A CLAIM AGAINST FARIA FOR AIDING AND ABETTING COMMISSION OF TORTIOUS CONDUCT (COUNT XI).

"[U]nder Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides substantial assistance or encouragement to the other party; and (2) the defendant has unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Mansor v. JPMorgan Chase Bank, N.A.*, No. CV 12-10544-JGD, 2016 WL 1676482, at *8 (D. Mass. Apr. 26, 2016) (citations omitted).

Count XI of the Complaint alleges that Faria aided and abetted the Principals in the commission of the torts arising from the Ponzi scheme.[7] Faria does not dispute that Plaintiff has adequately pled the underlying tort claims. With respect to Plaintiff's aiding and abetting claim (Count XI), Faria challenges the sufficiency of the Complaint's factual allegations to allege that

---

[6] *On reconsideration in part sub nom. W. Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F. Supp. 2d 329 (D.R.I. 2012), *aff'd sub nom. W. Reserve Life Assur. Co. of Ohio v. ADM Associates, LLC*, 793 F.3d 168 (1st Cir. 2015).

[7] To the extent that Faria claims he is unaware what underlying torts are at issue, these claims are rebutted by the face of the Complaint and the substance of Faria's own motion.

7

Faria had knowledge of the Ponzi scheme and that he provided substantial assistance or encouragement.

Plaintiff has sufficiently pled Faria's unlawful intent. Under Rule 9(b), while fraud must be pled with specificity, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). The requisite knowledge for an aiding and abetting claim may be shown by circumstantial evidence, so long as the allegations of fact "give rise to a strong inference of actual knowledge." *Mansor*, 2016 WL 1676482, at *8 (citations omitted); *accord Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 535 (6th Cir. 2000) ("For the purposes of establishing aiding and abetting liability, the requisite intent and knowledge may be shown by circumstantial evidence." (internal quotations omitted)). Here, as discussed *supra*, Faria knew that he was receiving manual credits from the Principals for no consideration, outside of, and contrary to, the terms of the Debtors' membership incentive plan. Nonetheless, Faria knowingly accepted these manual credits and monetized at least some of them for the Principals' and his own benefit, meanwhile expanding the Debtors' liability.[8] The factual allegations adequately support the general allegations of knowledge required by Rule 9(b) to raise a strong inference that Faria had actual knowledge of the Ponzi scheme. *See Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1121 (C.D. Cal. 2003) (finding that complaint adequately pled that co-conspirator-defendant-banks had actual knowledge of underlying fraud where although complaint did not "directly state that the Banks knew Slatkin was running a Ponzi scheme and stealing investor funds, this is the net effect of allegations that the Banks knew of Slatkin's 'fraud,' 'actively participated' in the Ponzi scheme with knowledge

---

[8] The fact that the Complaint also alleges that other Manual Credit Recipients were similarly culpable does not somehow weaken the sufficiency of the allegations specifically concerning Faria.

8

of his 'crimes,' and accommodated him by using atypical banking procedures to service his accounts.").

Plaintiff has also sufficiently pled Faria's substantial assistance. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach [of a duty] to occur." *Mansor*, 2016 WL 1676482, at *9 (internal citations and quotations omitted). Here, the Complaint alleges that Faria, knowing that he had obtained $990,702 worth of manual credits for no consideration, affirmatively acted to monetize at least some of these credits for the Principals' and his own benefit, at the Debtors' expense. The Complaint's allegations adequate plead that Faria provided substantial assistance to the Principals in furtherance of the Ponzi scheme. *See Mansor*, 2016 WL 1676482, at *11 (concluding that complaint's allegations satisfied the substantial assistance prong where they alleged conspirator's actions in removing certain account restraints "can reasonably be viewed as a continuation of that effort because it would have allowed the Millennium Bank scheme to continue."); *Benson v. JPMorgan Chase Bank, N.A.*, No. C-09-5272 EMC, 2010 WL 1526394, at *5 (N.D. Cal. Apr. 15, 2010) (plaintiffs met substantial assistance requirement by detailing banking services provided by the alleged-conspirator bank which allowed defendants to carry out a Ponzi scheme).

To the extent that Faria argues that the Complaint does not specifically identify each transaction that aided and abetted the Principals in the Ponzi scheme, no such pleading requirement exists. *See United Air Lines*, 716 F. Supp. 2d at 86 ("Here, given that United was not privy to the defendants' conversations with the voucher recipients, it is reasonable to excuse, at least at this stage, the plaintiff's inability to plead the circumstances surrounding those transactions with a 'high degree of precision.' Furthermore, where, as here, the alleged fraud

9

occurs over an extended period of time and involves numerous transactions, pleading the specifics of each transaction is unnecessary." (citation omitted))[9].

### IV. PLAINTIFF NEED NOT STATE EXACT DAMAGES AT THE PLEADING STAGE.

Faria takes issue with the Complaint's allegation that he monetized "up to" the full $990,702 worth of manual credits that he received for no consideration, without specificity as to the exact amount monetized. This argument is misplaced.

Faria's monetization of the manual credits is an issue relevant to determining damages; however, the amount of monetization is not solely determinative of the amount of damages. This is because Faria's mere receipt and use—separate from monetization—of the manual credits expanded the Debtors' liability by the inherent nature of a Ponzi scheme, and therefore caused damages to the Debtors. In any event, Plaintiff need not plead damages, including the amount actually monetized by Faria, with specificity. *See English v. BAC Home Loans Servicing LP*, No. 1:15-CV-345-JDL, 2016 WL 741344, at *3 (D. Me. Jan. 29, 2016), *report and recommendation adopted,* No. 1:15-CV-00345-JDL, 2016 WL 742888 (D. Me. Feb. 24, 2016):

> [O]nly special damages, those types of damages that are not usually associated with the claim in question, must be specifically stated in the complaint, Fed. R. Civ. P. 9(g), and the pleading of special damages does not require that a specific dollar amount be pleaded. C. Wright & A. Miller, 5A *Federal Practice & Procedure* §§ 1310–11 (3d ed. 2004). This procedural issue is governed by federal law in all cases brought in federal court. *Id.* § 1311, at 361–62. It is common for a defendant to "obtain . . . further desired information [about the amount of a plaintiff's damages] through the discovery process[,]" *id.* at 357–58, and, therefore, a plaintiff need not plead the exact amount of her claimed damages in her complaint. It is enough that she plead a claim for damages of a specific type, at most.

For present Rule 12(b)(6) purposes, Plaintiff only needs to plead that the Debtors' suffered <u>some</u> damages as a result of Faria's conduct. To the extent that monetization is salient, the Complaint

---

[9] Faria, in contrast, cites no authority whatsoever to support his argument.

10

alleges that Faria monetized up to $990,702 worth, and therefore at least some, of the manual credits, and this basis alone is sufficient to survive Faria's motion to dismiss.

V. THE COMPLAINT PROVIDES SUFFICIENT NOTICE UNDER RULE 9(b).

"Rule 9(b) is designed to ensure that defendants have notice of the specific conduct with which they are charged, and to guard against the filing of unsubstantiated charges that may harm an individual's reputation." *Neilson*, 290 F. Supp. 2d at 1132 (citation omitted). Thus, to "comply with Rule 9(b), allegations of fraud [or substantial assistance] must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (internal citations and quotations omitted; brackets in original). Even Rule 9(b)'s particularity requirements are not so draconian as to require a plaintiff to plead every detail concerning every defendant's conduct, particularly in a case like the present consolidated defendant class-action involving a complicated Ponzi scheme operating for multiple years. *See Conreal*, 715 F. Supp. 2d at 282-83; *Airport Boulevard Apartments, Ltd. v. NE 40 Partners, Ltd. (In re NE 40 Partners, Ltd.),* 411 B.R. 352, 366 (Bankr. S.D. Tex. 2009) ("Rule 9(b) does not work to penalize a plaintiff merely because he was not privy to, and, therefore, cannot plead the details of, the inner workings of a group of defendants who allegedly acted in concert to defraud him." (citation omitted)).

Here, the Complaint meets Rule 9(b)'s pleading requirements to provide Faria with fair notice of Plaintiff's conspiracy and aiding and abetting claims. The Complaint "details the manner in which the Ponzi scheme operated, describes [the Principals'] fraudulent transactions, and outlines [Faria's] involvement in these activities." *Neilson*, 290 F. Supp. 2d at 1120. The factual allegations "provide[] sufficient information to enable [Faria] to prepare an adequate defense. More is not required." *Id*. at 1132. Although Faria claims that he is forced to "guess

what he did to assist the Principals", the substance of his brief makes clear that he sufficiently understands the Complaint's allegations concerning both the underlying Ponzi scheme and Faria's own role in knowingly receiving and using/monetizing the manual credits.[10] Indeed, in Footnote 2 of his brief, Faria states that he "disputes nearly all of the allegations in the Complaint". Therefore, Faria can and should do so in a responsive pleading. Pursuant to the applicable relaxed Rule 9(b) pleading standard, the Complaint adequately states a claim under both Counts VII and Count XI.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Faria's motion to dismiss in its entirety.

>
> Respectfully submitted,
>
> STEPHEN DARR AS HE IS THE
> TRUSTEE OF THE CHAPTER 11
> ESTATES OF EACH OF THE DEBTORS
> By his attorneys,
>
> */s/ Andrew G. Lizotte*
> Charles R. Bennett, Jr. (BBO #037380)
> Andrew G. Lizotte (BBO #559609)
> Murphy & King, Professional Corporation
> One Beacon Street, 21st Floor
> Boston, MA 02108
> Tel.: (617) 423-0400
> Fax: (617) 423-0498
> CBennett@murphyking.com
> ALizotte@murphyking.com

Dated: June 10, 2016

*710489v1A*

---

[10] *Compare* the "Facts" sections of Plaintiff's and Faria's respective briefs, which are substantively consistent, even if the Parties dispute the adequacy of these facts to meet the pleading standard.

12