# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | |
| In re: ) | Chapter 11 Cases |
| ) | |
| TELEXFREE, LLC, ) | 14-40987 |
| TELEXFREE, INC., ) | 14-40988 |
| TELEXFREE FINANCIAL, INC., ) | 14-40989 |
| ) | |
| Debtors. ) | Jointly Administered |
| _____) | |
| ) | |
| STEPHEN DARR, CHAPTER 11 ) | Adversary Proceeding |
| TRUSTEE, ) | No. 16-04032 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARLOS WANZELER, JAMES ) | |
| MERRILL, CARLOS COSTA, PRISCILA ) | |
| FREITAS COSTA, FABIO WANZELER, ) | |
| LYVIA MARA CAMPISTA WANZELER, ) | |
| MARIA EDUARDA WANZELER DE ) | |
| ALMEIDA E SOUZA, DRUCILA ) | |
| WANZELER, MARISA MACHADO ) | |
| WANZELER SALGADO, RENATO ) | |
| ALVES, ANA COSTA, NATHANA ) | |
| SANTOS REIS, FABIO FARIA, ) | |
| LELIO CELSO RAMIRES FARIAS, ) | |
| SANDERLY RODRIGUES, VAGNER ) | |
| ROZA, ROBERT BOURGUIGNON, ) | |
| REGINA CELIA, MICHAEL ) | |
| CALAZANS, FABIO DE ARRAZ ) | |
| CRISPIM, SHEFFA MONTOYA, LUIS ) | |
| FERREIRA, SANDRES LEVIS, FEBE ) | |
| WANZELER DE ALMEIDA E SOUZA, ) | |
| and BRUNO RANGEL CARDOZO, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM OF DECISION

Before the Court is a motion to dismiss the claims against Fabio Faria ("Faria") set forth in Counts Seven and Eleven (the "Motion") in an adversary proceeding filed by Steven Darr, the Chapter 11 trustee (the "Trustee") in the jointly administered bankruptcy cases of Telexfree, LLC, Telexfree, Inc., and Telexfree Financial, Inc. (collectively, the "Debtors" or "Telexfree").   In the complaint, the Trustee alleges that Faria was a member of a civil conspiracy and aided and abetted the tortious conduct of defendants James Merrill, Carlos Wanzeler, and Carlos Costa (collectively, the "Principals"), who operated a Ponzi and pyramid scheme[1] that left the Debtors with close to $1 billion in liabilities.  Because the Court concludes that the complaint alleges facts sufficient to establish plausible claims against Faria, the Motion will be denied.

I.    FACTS AND TRAVEL OF THE CASE

The following recitation of facts is taken from the allegations in the complaint, matters of record in the underlying bankruptcy case, documents referenced in (and attached to) the complaint, and other matters of which the Court may take judicial notice.[2]

---

[1] The Debtors have previously been found to have operated a pyramid and Ponzi scheme, which ruling is the law of the case in each of the jointly administered cases.  See Order of November 25, 2015, ECF No. 654 (Hoffman, J.), as amended on December 21, 2015, ECF No. 668 (Hoffman, J.), in lead case number 14-40987.

[2] While a court generally may not consider documents that are extrinsic to the complaint in ruling on a motion to dismiss, there are exceptions "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."  *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001) (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)); *see also Currie v. Wells Fargo Bank, N.A. (In re Currie)*, Slip Copy, Bankr. No. 11-17349-JNF, Adv. No. 12-1009, 2013 WL 1305805, *1 n.1 (Bankr. D. Mass. March 28, 2013) ("The Court may take judicial notice of the documents in the debtor's file and those in the Court's own records.").

Each of the Debtors operated a Ponzi and pyramid scheme (the "Scheme")[3] that raised money from individuals who purchased membership plans in Telexfree (the "Participants"). Each time a Participant purchased a membership plan, an account ("User Account") was established to track the Participant's activity in the Scheme. Participants received credits to their User Accounts for selling membership plans and voice over internet protocol ("VoIP") packages and placing internet ads, which could be redeemed for cash, transferred to another User Account, applied to satisfy an invoice for another User Account, or monetized via a transaction wherein a Participant recruited another Participant to join the Scheme, collected the recruited Participant's payment of the membership plan invoice issued by the Debtors to the recruited Participant, and redeemed accumulated credits in satisfaction of that invoice.

The Trustee alleges that the Principals were intimately involved in the perpetration of the Scheme for their personal benefit and, in an effort to further profit from the Debtors' credit system, engineered the issuance of additional credits that were unrelated to membership plan purchases, ad placements, or any other compensation scheme and for which there was no consideration (the "Manual Credits") to the User Accounts of a select group of Participants ("Manual Credit Recipients"), many of which were sold to other Participants and generated additional money for the Principals and Manual Credit Recipients while increasing the Debtors' liability when the Manual Credits would eventually be redeemed. According to the Trustee, the Principals and/or the Manual Credit Recipients received up to $98,611,860 from the sale of Manual Credits, leaving the Debtors with massive liabilities to their membership program.

The Debtors filed voluntary petitions under Chapter 11 of the United States Bankruptcy

---

[3] A "Ponzi scheme" is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments . . . ." Ponzi Scheme Definition, *Black's Law Dictionary* (11th ed. 2019). A "pyramid scheme" is "[a] dishonest and often illegal way of selling investments, whereby money from later investors is used to pay people in the system who have already invested . . . ." Pyramid Scheme Definition, *Black's Law Dictionary* (11th ed. 2019).

Code (the "Bankruptcy Code" or the "Code")[4] in the District of Nevada on April 13, 2014 (the "Petition Date"); the Debtors' cases were consolidated for procedural purposes and thereafter have been jointly administered. In May 2014, the Debtors' cases were transferred to the District of Massachusetts, and the Trustee was appointed on June 6, 2014. On September 22, 2015, the Court approved the employment of Huron Consulting Services, LLC ("Huron") as the Trustee's accounting and financial advisor to provide various services, including analysis of the Debtors' data, forensic accounting, assistance to counsel in the development of litigation claims, and forensic and litigation consulting services. On April 1, 2016, the Trustee filed the instant adversary proceeding against the Principals, various individuals allegedly related to or affiliated with the Principals and deemed by the Trustee to have received more from the Scheme than they invested (the "Related Net Winners"), and certain Manual Credit Recipients, including Faria, alleged by the Trustee to have facilitated the Principals' implementation of the Scheme.

In the complaint, the Trustee alleges that Faria received and monetized "up to" $990,702 in Manual Credits for the benefit of himself and the Principals and alleges that by doing so, Faria participated in a civil conspiracy to implement and profit from the Scheme and aided and abetted the Principals' tortious conduct. The Trustee also alleges that all Manual Credit Recipients, which include Faria, sold Manual Credits to other Participants and distributed some or all of those sale proceeds to the Principals or for their benefit.

Faria responded by filing the Motion, disputing but refraining from refuting "nearly all" of the allegations as pertaining to Faria, Faria Memorandum, 3 n.2, May 16, 2016, ECF No. 14, and seeking dismissal of the claims against Faria for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"), made applicable to these proceedings by

---

[4] *See* 11 U.S.C. §§ 101 *et seq.* All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

Fed. R. Bankr. P. 7012.  The adversary proceeding was stayed for a period of years, at the Trustee's

request, due to a pending criminal action against defendant and Principal James Merrill.  This

Court held a status conference on May 26, 2022 and provided Faria and the Trustee the opportunity

to file supplemental briefs regarding the Motion, which both parties did.  After a hearing on the

Motion, the Court took the matter under advisement.


II.    <u>POSITIONS OF THE PARTIES</u>

Faria argues that the Trustee relies entirely on conclusory statements and allegations

lacking any particularity to support the Trustee's claims that Faria was a member of a conspiracy

to commit fraud and aided and abetted the Principals' tortious conduct.  Faria notes that his name

appears only once in the body of the complaint as an individual who "monetized up to" the total

amount of Manual Credits that Faria received without any allegation that Faria knew the Principals

or their relatives alleged to have participated in the Scheme, that Faria had interactions or any

relationship with the Principals, or that Faria gave any form of kickback to the Principals.

According to Faria, the Trustee has described the Manual Credits as "worthless," and the Trustee's

failure to accuse Faria of receiving net winnings in the complaint (or in the Trustee's separate

adversary proceeding against domestic net winners) supports the conclusion that Faria did not

actually monetize Manual Credits.  Faria further notes in his supplemental brief that the Trustee

has failed to amend the complaint to provide any further detailed factual allegations despite six

years having passed since the complaint was filed and expenses having been incurred to analyze

the Debtors' data.  Accordingly, Faria states that one can only reasonably conclude that no

additional factual details exist.  Furthermore, Faria argues, the Trustee's allegation that Faria

received worthless Manual Credits, standing alone, is insufficient to plausibly allege that Faria

agreed to participate in a conspiracy or that Faria knew of and participated in the Principals'

5

tortious conduct.

According to Faria, the Trustee fails to set forth sufficient facts to plausibly suggest or allow this Court to infer that Faria was aware of the alleged fraud or tortious conduct of the Principals, was part of any agreement or had a common design with another to commit fraud, acted in furtherance of the alleged conspiracy, or actively participated in or substantially assisted the Principal's tortious conduct. Faria says that the complaint fails to meet the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) and does not contain sufficient factual allegations to satisfy each element of either the conspiracy or aiding and abetting claims, requiring dismissal of the complaint as to Faria under *Gagliardi v. Sullivan*, 513 F. 3d 301 (1st Cir. 2008).

To the extent that the Trustee's claims against Faria are predicated on fraud, Faria maintains that the heightened pleading standard of Fed. R. Civ. P. 9(b) ("Rule 9(b)"), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7009, applies. Faria says that the Trustee possesses the Debtors' data, which was analyzed by Huron, while Faria is unable to even access his User Account. Therefore, Faria argues, the Trustee should be held to this heightened standard without exception. Faria disputes the Trustee's assertion that the details of the Manual Credit monetization transactions are only required to determine damages. According to Faria, Rule 9(b) requires the Trustee to detail the credit monetization transactions by asserting the parties to the transactions, the dates, and the amounts. And, because the complaint fails to adequately allege either Faria's affirmative assistance or enabling of the Principals' tortious conduct or the specifics of Faria's alleged participation in the fraud – namely, when Faria joined the conspiracy, who Faria reached an agreement or common design with, and what acts he agreed to do and actually performed in furtherance of and to actively participate in the fraud – Faria argues that the factual allegations are objectively inadequate as a matter of law and all claims against him must

be dismissed with prejudice.

In opposing the Motion, the Trustee clarifies that the term "up to" is synonymous with "at least some" as relates to the factual allegation that Faria monetized his Manual Credits totaling $990,702. While conceding that the credits inherently had no value, the Trustee explains that the credits could be monetized for value during the operation of the Scheme. The Trustee asserts that, as a Participant in the Debtors' membership program, Faria would have understood that Faria received the Manual Credits for no consideration and unrelated to incentive activities and therefore was aware of both the conspiracy and the Principals' tortious conduct. And the Trustee states that by knowingly monetizing Manual Credits, Faria intentionally furthered the Scheme and substantially assisted the Principals' tortious conduct.

In his original brief, the Trustee acknowledged that the heightened pleading standard of Rule 9(b) applies both to actual fraud claims and "associated claims where the core allegations effectively charge fraud." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).[5] According to the Trustee, Rule 9(b) requires the Trustee to state the circumstances constituting fraud with particularity, but the complaint need only allege Faria's intent and/or knowledge generally. The Trustee says that, to the extent Rule 9(b) applies, the Court should relax the heightened pleading standard as some bankruptcy courts have done for trustees bringing fraud claims, since a trustee "must rely on secondhand knowledge for the benefit of the estate and all of its creditors." Trustee's Opposition, 4, June 10, 2016, ECF No. 24 (quoting *Barry v. Santander Bank, N.A. (In re Liberty State Benefits of Delaware, Inc.),* 541 B.R. 219, 233 (Bankr. D. Del. 2015)).

In his supplemental brief, the Trustee erroneously states that the only claim asserted against

---

[5] However, in the Trustee's supplemental brief, the Trustee cites *Cardinale*, 567 F.3d at 15, to support his position that Rule 9(b) only requires a party to plead a claim alleging actual fraud, and not associated claims, with particularity.

Faria is the aiding and abetting claim set forth in Count Eleven[6] and argues that Rule 9(b) only potentially applies to that claim to the extent that it alleges that Faria aided and abetted the Principals' actual fraudulent transfers set forth in Count Two.  And the Trustee argues that, to the limited extent Rule 9(b) may apply to Count Eleven, it has been satisfied since the law of the case is that the Debtors engaged in a Ponzi scheme, which carries a presumption that payments in furtherance of the scheme are made with actual intent to defraud, citing *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439, 471 (Bankr. S.D.N.Y. 2015).  As to the Trustee's allegations that Faria aided and abetted the Principals' breaches of fiduciary duties, the Trustee argues that Rule 9(b) does not apply.

The complaint details the manner in which the Scheme operated and alleges that the Principals caused the Debtors to issue Manual Credits to only a select group of Participants, including Faria.  The Trustee argues that those factual allegations are sufficient for the Court to infer that Faria and at least one other person acted pursuant to an agreement to further and profit from the Scheme and that Faria sold Manual Credits for that purpose.  The Trustee also says that the factual allegations support the reasonable inference that Faria had actual knowledge of the Principals' tortious conduct arising from the Scheme and that Faria intentionally and substantially assisted and/or encouraged the Principals by his sale of Manual Credits and disbursement of at least some of the sale proceeds to the Principals or for their benefit, which furthered the Scheme.  In addressing Faria's protest that the complaint fails to identify each transaction by which Faria aided and abetted the Principals in the Scheme or to specify the exact amount of Manual Credits that Faria monetized, the Trustee asserts that no such pleading requirement applies.

The Trustee points to Faria's failure to challenge the sufficiency of the other Counts of the

---

[6] The complaint also alleges civil conspiracy against Faria in Count Seven.

complaint, which include claims against the Principals for breach of fiduciary duties and looting

and for the recovery of payments received as mediate transferees from the Manual Credit

Recipients, as well as the substance of Faria's memorandum, as evidence that the complaint's

factual allegations provide sufficient notice of the Trustee's claims against Faria and to rebut

Faria's alleged incognizance of the underlying torts at issue.  Consequently, the Trustee argues

that the complaint contains sufficient factual allegations to provide fair notice to Faria of the

conspiracy and aiding and abetting claims and contains enough information for Faria to adequately

answer the complaint.  Asserting that the complaint satisfies the pleading requirements of Fed. R.

Civ. P. 8 ("Rule 8"), made applicable by Fed. R. Bankr. P. 7008, and Rule 9(b) (to the limited

extent that it applies), the Trustee requests that the Court deny the Motion.

In addition to Faria's request that the Court dismiss the claims against him in this adversary

proceeding, Faria also requests in his supplemental brief that the Court bar the Trustee from

pursuing monetization-based claims against Faria in a separate, pending adversary proceeding

(*Darr v. Argueta,* Adversary Proceeding No. 14-4006) or in any other matter.  The Trustee

commenced the *Argueta* case on January 15, 2016 against 23 named defendants and a defendant

class of "net winners" to recover fraudulent and preferential transfers.  On April 14, 2016, the

Court granted the Trustee leave to amend the *Argueta* complaint to add 82 new defendants.  Faria

is not a named defendant in the *Argueta* proceeding.

According to Faria, both this adversary proceeding and the pending *Argueta* proceeding

involve identical subject matter and parties and thus Faria says the Court should prevent the

Trustee from adding Faria as a defendant in the *Argueta* case, because to do so would subject Faria

to duplicative claims in multiple proceedings. Faria asserts that dismissal of the claims in this

adversary proceeding would be a judgment on the merits for purposes of *res judicata*, thus

precluding the Trustee from bringing identical claims against Faria in the context of the *Argueta*

case, citing to *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981).

The Trustee says that *Argueta* was commenced as a class action against a putative class of defendants comprised of domestic net winners in the Scheme to pursue fraudulent and preferential transfer claims against the class members.   According to the Trustee, the *Argueta* class action claims involve a separate set of facts and legal standards from the claims raised in this proceeding. The Trustee would not be able to maintain the claims raised in this proceeding against all class defendants in *Argueta*.   Therefore, the Trustee argues, neither *res judicata* nor the bar against duplicative litigation are applicable.


III.    <u>DISCUSSION</u>

   **A.  Pleading and Dismissal Standards**

To decide a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6), "the Court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Rodriguez-Reyes vs. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citing *Morales-Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir. 2012)).   A court looks at all the allegations contained in the "four corners of the complaint" when deciding a motion to dismiss pursuant to Rule 12(b)(6). *U.S. ex rel. Rost v. Pfizer, Inc.*, 253 F.R.D. 11, 15 (D. Mass. 2008) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).   Accepting the factual allegations in the complaint as true, the court must then draw all reasonable inferences in the plaintiff's favor and determine whether those alleged facts are sufficient to "state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Assessing "a pleaded situation's plausibility is a 'context-specific' job that compels us 'to draw on' our 'judicial experience and common sense.'"  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).  This Court must consider whether "the complaint warrant[s] dismissal because it failed in toto to render plaintiff's entitlement to relief plausible."  *Rodriguez-Reyes*, 711 F.3d at 55 (quoting *Twombly*, 550 U.S. at 569 n.14).

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  However, claims of fraud are subject to an exception to Rule 8(a)'s simplified pleading standard.  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  The purpose of this heightened pleading standard is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery."  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).

The Trustee alleges that all of the defendants conspired to engage in and implement the Scheme, which by definition is a form of fraud.  *Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 656, 658 (Bankr. M.D. Fla. 2002) ("A Ponzi scheme is by definition fraudulent . . . and any acts taken in furtherance of [a] Ponzi scheme are also fraudulent.").  Count Seven therefore asserts a claim for civil conspiracy to commit fraud, rendering Rule 9(b)'s heightened pleading standard applicable because "fraud is specifically alleged as an ingredient of

the claim." *Cardinale*, 567 F.3d at 14.

With regard to Count Eleven, the complaint alleges that Faria aided and abetted the Principals' tortious conduct, described as the commission of "the primary causes of action alleged therein," consisting of Counts One, Two, Four, Five, and Six.[7]  Rule 9(b)'s heightened pleading standard applies to Count Eleven to the extent that fraud is a component of a cause of action underpinning the aiding and abetting claim.  *Id.*

Count One sets forth claims for constructive fraudulent transfers pursuant to § 548(a)(1)(B).  Rule 9(b) is not applicable to claims for constructive fraudulent transfers since they do not involve allegations of actual intent to defraud.  *See Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Inv. Secs. LLC)*, 454 B.R. 317, 332 (Bankr. S.D.N.Y. 2011).  Therefore, Rule 9(b) does not apply to the claim that Faria aided and abetted the Principals' constructive fraudulent transfers set forth in Count One.  However, Rule 9(b)'s heightened pleading standard clearly applies to Count Two, as that count alleges actual fraudulent transfers under § 548(a)(1)(A).[8]

---

[7] See Complaint, 30 ¶ 142. The complaint sets forth Counts One through Six specifically against the Principals.  Count Three, for recovery of preferential transfers, is based on §§ 547, 550 and 551 of the Bankruptcy Code, and the Trustee has not cited any law or argued that this claim is based in tort.  Since the Trustee indicated in his supplemental brief that he does not intend to pursue Count Three, the Court will not consider Count Three in its analysis of the aiding and abetting claim.

[8] 11 U.S.C. §548(a)(1) provides:

(a)  (1) The Trustee may avoid any transfer (including any interest to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily-

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

Counts Four and Five set forth claims for breach of duty of care and breach of duty of good faith, respectively, based on allegations that the Principals caused the Debtor to engage in the Scheme that the Principals then carried out for the benefit of the Principals, Related Net Winners, and Manual Credit Recipients while causing the Debtors to incur unsatisfiable debt to the Scheme's net losers.  Count Six sets forth a claim for "looting" based on allegations that the Principals committed corporate waste by drawing excessive distributions, colluded with the Related Net Winners to extract fictitious profits from the Scheme and share in net winning payments, and colluded with Manual Credit Recipients for the financial benefit of the Principals and the Manual Credit Recipients.  Although the Trustee failed to cite any statutory or common law claim for "looting," Count Six sounds in a claim based on breach of fiduciary duty and the Court will treat it as such.

While the claims for breach of fiduciary duties may not appear subject to Rule 9(b) on their face, Rule 9(b) is read "expansively to cover associated claims where the core allegations effectively charge fraud." *Cardinale*, 567 F.3d at 15 (citing *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985)).  Counts Four, Five, and Six, to some degree, each involve the Principals' use of the Debtors to orchestrate the Scheme to the detriment of the Debtors and in violation of their fiduciary duties.  The Trustee's overall legal theory is that the Principals violated their duties by

---

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

mismanaging the Debtors, acting in bad faith, and committing corporate waste.  And while the Trustee alleges in Count Six that the Principals drew excessive distributions, the nucleus of Counts Four, Five, and Six is that the Principals violated their duties by engaging in fraudulent activity, the Scheme.  Although these counts seek relief for breaches of fiduciary duties to the Debtors, they are based on allegedly fraudulent and improper conduct by the Principals as officers, principals, and/or directors.  Consequently, the Rule 9(b) heightened pleading requirement applies to the Count Eleven claim that Faria aided and abetted the Principals' violation of fiduciary duties set forth in Claims Four, Five, and Six to the extent that those claims allege that the Principals engaged in fraudulent activity.  *See In re Felt Mfg. Co., Inc.*, 371 B.R. 589, 608 (Bankr. D.N.H. 2007) (citing *Lalonde v. Textron, Inc.*, 369 F.3d 1, 6 (1st Cir. 2004)).  In summary, the heightened pleading standard of Rule 9(b) applies to the Count Eleven claim that Faria aided and abetted the Principals' actual fraudulent transfers set forth in Count Two and to the breach of fiduciary duty claims set forth in Counts Four, Five, and Six to the extent of the Principals' alleged fraudulent activity, but Rule 9(b) does not apply to the claim that Faria aided and abetted the Principals' constructive fraudulent transfers set forth in Count One.

While Rule 9(b) is applicable to Count Seven and to some extent Count Eleven, strict application of the heightened pleading standard may be relaxed pending discovery in some circumstances, such as "when the underlying facts are 'peculiarly within the defendants' control.'" *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 86 (D. Mass. 2010) (quoting *U.S. ex rel. Franklin v. Parke-Davis, Div. of Warner-Lambert Co.*, 147 F. Supp. 2d 39, 47 (D. Mass. 2001)). Because a bankruptcy trustee is a "third party outsider" and "must rely on secondhand knowledge for the benefit of the estate and all of its creditors," some bankruptcy courts have applied a relaxed Rule 9(b) standard to trustees bringing claims of fraud. *Liberty*, 541 B.R. at 233 (internal citations and quotations omitted). While the Trustee has had access to the Debtors' data and the extensive

analysis performed by the Trustee's accounting and financial advisor, the Trustee has not had an opportunity to conduct discovery regarding Faria's disposition of proceeds from the sale of Manual Credits or Faria's transactions with or for the benefit of the Principals. In addition, the Court is not aware that the Trustee has had access to the personal financial records of the Principals, Related Net Winners, or the other Manual Credit Recipients. Consequently, the Court will slightly relax the Rule 9(b) standard as it applies to Counts Seven and Eleven.

### B.  Count Seven: Civil Conspiracy

In Count Seven, the Trustee alleges that Faria and the other defendants, for an unlawful purpose and using unlawful means, agreed or commonly designed to engage in, implement, further, and profit from the Scheme and engaged in a tortious act in furtherance of the agreement or common design, leaving the Debtors liable to Participants for approximately $1 billion in losses resulting from the Scheme. In their respective briefs regarding the Motion, the parties cite Massachusetts law as the applicable law under Count Seven. While the First Circuit, applying Massachusetts law, has identified two types of civil conspiracy, the Trustee and Faria concur that the Trustee alleges that Faria engaged in the type of civil conspiracy "akin to a theory of common law joint liability in tort." *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1563-64 (1st Cir. 1994). To establish liability for this type of conspiracy, the plaintiff must allege "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id*. at 1564 (citing Restatement (Second) of Torts § 876 cmt. B (Am. Law Inst. 1979)). Of these elements, Faria argues that the factual allegations are insufficient to either prove or infer the existence of an agreement involving Faria.

Based on the factual allegation that Faria was a Participant who had Manual Credits issued to his User Account, the Court may draw an inference in the Trustee's favor that, due to Faria's

experience with the Debtors' membership program, Faria was aware that the Manual Credits were issued to him for no consideration and the issuance of the Manual Credits was not consistent with the terms of the Debtors' membership incentive plan. The allegation that Faria proceeded to sell at least some of those Manual Credits to other Participants supports a claim that Faria acted with an unlawful purpose and in furtherance of the Scheme. Due to the Court's prior finding that the Scheme was a Ponzi and pyramid scheme, and by nature was fraudulent, the Trustee's allegation that Faria sold some of those Manual Credits and thereby furthered the Scheme allows the Court to read the complaint as alleging that Faria committed a "wrongful act."

The requisite conspiratorial agreement need not be express "so long as its existence can plausibly be inferred from words, actions, and the interdependence of activities and persons involved." *Aetna*, 43 F.3d at 1562. The Trustee has alleged that the Principals orchestrated the issuance of Manual Credits totaling $990,702 for no consideration to Faria and that Faria monetized up to the total amount of Manual Credits for the benefit of himself and the Principals. While the Trustee has not alleged that Faria was a relative of any of the Principals, the Trustee alleges generally that the Principals used both relatives and "surrogates" (an undefined term) to profit from the Scheme. The Trustee alleges that Faria distributed some or all of the proceeds from Faria's sale of Manual Credits to the Principals or for their benefit, allowing the Court to plausibly infer that Faria had an agreement with at least one other person, a Principal, to engage in and implement the Scheme.

Because the tort underpinning Count Seven for conspiracy is fraud, the Court must consider the relaxed applicability of Rule 9(b)'s heightened pleading standard, which usually requires averment of the "who, what, where, and when" of the alleged fraud. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). The Court finds that the complaint contains sufficient factual allegations to establish the "who" and what" of Faria's fraudulent activity as

16

discussed above – namely, that due to Faria's experience with the Debtors' membership program, the Court can infer that Faria was aware that the Manual Credits were issued to him for no consideration and inconsistent with the membership program terms and proceeded to sell Manual Credits and distribute at least some of the sale proceeds for the benefit of himself and the Principals.  The Trustee's failure to allege the "where" and "when" or to provide details of Faria's transactions involving the sale of Manual Credits to other Participants and the disbursements of those sale proceeds is logical considering the pre-discovery stage of this proceeding.  While the Trustee may have access to the Debtors' data, Faria has not asserted that the Trustee has had access to Faria's data.  Having found that the Trustee's position and circumstances justify applying a relaxed Rule 9(b) pleading standard, the Court finds that the Trustee has sufficiently pled factual allegations to support the plausible inference that Faria had an agreement with another person to engage in, implement. and further the Scheme and sold Manual Credits received for no consideration for profit in furtherance of the Scheme.  While Faria argues that he was "unwittingly ensnared in the Scheme," the allegation that Faria disbursed at least some of his Manual Credit sale proceeds to the Principals or for their benefit supports an inference that Faria was an active participant, rather than merely engaged in "parallel conduct that could just as well be independent action."  *See Twombly*, 550 U.S. at 557.  Accordingly, the Court finds that the complaint has sufficiently stated a claim against Faria for civil conspiracy and the Motion will be denied as to Count Seven.

### C.  Count Eleven: Aiding and Abetting the Commission of Tortious Conduct

In Count Eleven, the Trustee alleges that Faria aided and abetted the Principals' commission of the tortious conduct alleged in Counts One, Two, Four, Five, and Six by receiving and selling Manual Credits and distributing at least some of the sale proceeds to or for the benefit of the Principals with unlawful intent and with knowledge that the Principals were perpetrating the

Scheme.  Neither party disputes that Massachusetts law applies to the Trustee's aiding and abetting claim.

"[U]nder Massachusetts law liability for aiding and abetting a tort attaches where: (1) the defendant provides substantial assistance or encouragement to the other party; and (2) the defendant has unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions." *Mansor v. JP Morgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 264 (D. Mass. 2016) (citations omitted).

As to Count One (recovery of constructive fraudulent transfers) and Count Two (recovery of actual fraudulent transfers), the Trustee has alleged that the Principals controlled the Debtors, who paid specified sums in the millions directly to or for the benefit of each of the Principals, including some payments received as mediate transferees from Manual Credit Recipients, within two years of the Petition Date.  In Exhibits A-E to the complaint, the Trustee identifies the date, account number, transferee, method of transfer, and amount of payments made by the Debtors to or for the benefit of the Principals within two years of the Petition Date.  In Count One the Trustee has alleged that these transfers were made for less than reasonably equivalent value, which, based on the nature of the Scheme and the alleged amounts involved, is plausible.  In light of the allegations detailing the operation of the Scheme and the allegation that the Principals caused the Debtors to incur obligations to Participants that the Debtors were wholly unable to pay, the Court finds it plausible that the Debtors owed substantial debt and were insolvent at the time of the transfers or were rendered insolvent as a result thereof.  Regarding the claim that Faria aided and abetted the Principals' constructive fraudulent transfers, which is not subject to a heightened pleading standard, the Trustee has sufficiently pled the underlying tort of constructive fraudulent transfer.

The Court has previously found that the Debtors operated a Ponzi scheme, and "[i]t is now

well recognized that the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay and defraud creditors." *Picard* 445 B.R. at 220.  And, applying a relaxed Rule 9(b) standard as to the "who, what, how, and when" of the alleged actual fraudulent transfers for the reasons discussed above, the Court finds that the Trustee has sufficiently pled facts for the Court to find that the Principals were the recipients of actual fraudulent transfers as set forth in Count Two.

The question remains whether the Trustee has sufficiently pled that Faria had knowledge of the constructive and actual fraudulent transfers to the Principals and intentionally provided assistance that was substantial.  "[P]leading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a strong inference of actual knowledge." *Mansor*, 183 F. Supp. 3d at 264 (quoting *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011)).  The Trustee has alleged that Faria was part of a select group of individuals who received Manual Credits, at least some of which he then sold to other Participants and distributed at least a portion of those sale proceeds to the Principals or for their benefit.  The Court has found that based on the allegations of Faria's experience as a Participant in the Debtors' membership program, it could be plausibly inferred that Faria was aware that he received the Manual Credits for no consideration and in a manner inconsistent with the terms of the Debtors' membership incentive plan, which in turn raises a strong inference that Faria had actual knowledge of the Scheme.  The Trustee also alleges that Faria sold Manual Credits to other Participants and distributed at least some of those sale proceeds to the Principals or for their benefit. From those allegations, the Court may infer that Faria substantially assisted the Principals in their receipt of fraudulently transferred funds.  Consequently, the Court finds that the Trustee's factual allegations provide a strong inference that Faria had actual knowledge of the Principals' receipt of constructive and fraudulent transfers and that Faria provided substantial assistance to the Principals.  The Court finds that the

allegations in the complaint are sufficient to establish claims that Faria aided and abetted the Principals' receipt of constructive fraudulent transfers as set forth in Count One and actual fraudulent transfers as set forth in Count Two.

In Counts Four and Five, the Trustee alleges that Faria aided and abetted the Principals' breaches of their fiduciary duties of care and good faith, respectively. In Count Six, the Trustee alleges that the Principals looted the Debtors and committed corporate waste by drawing excessive distributions and colluding with Related Net Winners to extract and share in fictitious profits and with Manual Credit Recipients to financially benefit from monetized Manual Credits. As discussed above, the Court will treat the Count Six looting claim as a breach of fiduciary duty claim.

"The elements of the tort of aiding and abetting a breach of fiduciary duty are: (1) there must be a breach of fiduciary duty; (2) the defendants must know of the breach; and (3) the defendants must have actively participated or substantially assisted in or encouraged the breach to such a degree that they could not reasonably have been acting in good faith." *Baker v. Wilmer Cutler Pickering Hale and Dorr LLP*, 81 N.E.3d 782, 793 (Mass. App. Ct. 2017) (citing *Arcidi v. Nat'l Assn. of Govt. Employees*, 447 Mass. 616, 623-624 (2006)). As to the element of breach of fiduciary duty, the Trustee alleges breach by way of the Principals' fraudulent activity, which is subject to the relaxed Rule 9(b) standard. The law of the case is that the Scheme itself is fraudulent. Accordingly, the complaint sufficiently details the Principals' engagement in fraudulent activity, via orchestration and implementation of the Scheme, to satisfy the relaxed Rule 9(b) standard. The allegations in the complaint provide fair notice of the nature of the claimed breaches of fiduciary duty and Faria has not challenged the sufficiency of those allegations. Faria does not dispute that the complaint states a claim that the Principals, through their orchestration of the Scheme, caused the Debtors to incur unsatisfiable debt, breached fiduciary duties of care and good faith, and looted

the Debtors.

However, Faria urges the Court to find that the complaint does not sufficiently plead either Faria's knowledge or the level of substantial assistance required for an aiding and abetting claim. "To establish a common law cause of action for aiding and abetting, plaintiffs must at least demonstrate some measure of 'active participation' and the knowing provision of substantial assistance." *Schultz v. Rhode Island Hosp. Trust Nat'l Bank*, 94 F.3d 721, 730 (1st Cir. 1996) (citing *Spinner v. Nutt*, 417 Mass. 549, 556 (1994)).

As discussed above, the factual allegations in the complaint allow the inference that Faria would have realized that he received the Manual Credits for no consideration. And, in addition to the factual allegations that the Principals used relatives and surrogates to profit from the Scheme and Faria was issued $990,702 in Manual Credits, which were issued to only a select group of individuals, the Court may reasonably infer that Faria was aware that some fraudulent activity by or on behalf of the Debtors was occurring. The Trustee's allegation that Faria, a Manual Credit Recipient, sold Manual Credits to other Participants and distributed at least some of those sale proceeds to the Principals or for their benefit allows the Court to reasonably infer that Faria knowingly provided substantial assistance to the Principals in their breaches of fiduciary duty. Therefore, the allegations in the complaint set forth plausible claims that Faria aided and abetted the Principals' tortious conduct set forth in Counts Four, Five, and Six. Accordingly, the Court finds that the complaint has sufficiently stated a claim against Faria for aiding and abetting the commission of tortious conduct and the Motion will be denied as to Count Eleven.

### D.  Faria's Request to Preclude Trustee from Pursuing Claims in Another Proceeding

The Court will not issue an order in the context of the current Motion that bars the Trustee from naming Faria as defendant in the *Argueta* adversary proceeding or any other proceeding, as to do so would require the Court to issue an advisory opinion on an unrelated matter. *See Flast v.*

*Cohen*, 392 U.S. 83, 96 (1968) (It is clear that "the oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions.") (quoting Charles Alan Wright, Federal Courts 34 (1963)).  To the extent Faria is either named as, or considered to be, a defendant in the *Argueta* proceeding or any other matter, Faria is free to file a motion to dismiss in the relevant proceeding.

IV.   <u>CONCLUSION</u>

For all the foregoing reasons, the Court rules that the Trustee, in the complaint, has stated plausible claims that Faria engaged in conspiracy to commit fraud and aided and abetted the Principals regarding constructive and actual fraudulent transfers, breaches of fiduciary duties of care and good faith, and looting/corporate waste.  The Court will not issue an advisory opinion as to whether Faria may be named as a defendant in any other proceeding.  Accordingly, the Court will DENY the Motion.  A separate order in conformity with this Memorandum will issue forthwith.

By the Court

Dated: February 22, 2023

Elizabeth D. Katz
United States Bankruptcy Judge

22